FILED

2012 MAY 31 PM 4:00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY ____________________

**EDGERTON & WEAVER, LLP**
THEODORE C. PETERS (CA Bar No. 235115)
ELIZABETH DEL CID (CA Bar No. 250962)
2615 Pacific Coast Highway, Suite 300
Hermosa Beach, California 90254
Tel: (310) 937-2066 • Fax: (310) 937-2064
E-mail: tpeters@edgertonweaver.com
E-mail: edelcid@edgertonweaver.com

Attorneys for Plaintiffs, William Dominick and Westwood Rare Coin Gallery, Inc.

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

WILLIAM DOMINICK; and WESTWOOD RARE COIN GALLERY, INC.,

Plaintiffs,

vs.

COLLECTORS UNIVERSE, INC.; CERTIFIED ASSET EXCHANGE, INC. a/k/a CERTIFIED COIN EXCHANGE; DAVID HALL; CASSI EAST; MICHAEL BRANDOW; and DOES 1 through 10, inclusive,

Defendants.

Case No. **CV 12 - 04782 ODW (CWx)**

**COMPLAINT FOR:**

1. **VIOLATION OF SECTION 1 OF THE SHERMAN ACT (15 U.S.C. § 1)**
2. **VIOLATION OF SECTION 2 OF THE SHERMAN ACT (15 U.S.C. § 2)**
3. **VIOLATION OF SECTION 2 OF THE CLAYTON ACT (15 U.S.C. § 14)**
4. **VIOLATION OF LANHAM ACT (15 U.S.C. §§ 1051 *et seq.*)**
5. **UNREASONABLE RESTRAINT OF TRADE (CAL. BUS. & PROF. CODE § 16720)**
6. **UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200)**
7. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
8. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
9. **BREACH OF CONTRACT**
10. **CIVIL CONSPIRACY**
11. **AIDING AND ABETTING**

**DEMAND FOR JURY TRIAL**

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

## INTRODUCTION

1. This action is brought by Plaintiffs William Dominick ("Dominick") and his company, Westwood Rare Coin Gallery, Inc. ("WRCG") (collectively, "Plaintiffs"). Plaintiffs are suing their competitors, Defendants David Hall ("Hall") and David Hall Rare Coins ("DHRC"). Plaintiffs are also suing Hall and DHRC's co-conspirators, Defendants Collectors Universe, Inc. ("CU"), Certified Asset Exchange, Inc. a/k/a Certified Coin Exchange ("CCE"), Cassi East ("East"), and Michael Brandow ("Brandow") (together with Hall and DHRC collectively referred to herein as "Defendants"). Defendants have conspired to monopolize the rare coin market and to limit free trade in this localized market.

2. This action arises out of Defendants' attempt to preclude competition in the rare coin and currency marketplace, notably known as CCE. CCE is the principal dealer-to-dealer exchange of certified U.S. rare coins in the United States. CCE is also the world's largest and most active online trading platform for numismatists.[1]

3. On the CCE trading platform, dealers buy and sell all types of numismatic material, including bullion, raw coins, certified coins, bags, state quarters, eagles, foreign coins, ancients, currency and numismatic supplies.

4. Defendants operate CCE.

5. Dominick and Hall are direct competitors in the rare coin business. They each own a dealer firm, respectively, WRCG and DHRC.

6. Until 2010, WRCG and DHRC were both full-time members of the online trading platform, CCE. WRCG remains in business. However, Defendants have engaged in unfair trading and antitrust activity, as alleged herein, in order to put WRCG and Dominick at a competitive disadvantage in the coin market.

7. Specifically, Defendants have unlawfully conspired to manipulate the market to their advantage by determining who can trade on the platform, the number of

---

[1] Numismatists are people who study and/or collect coins, metals, and similar products.

contracts that can be executed on a given trading day and artificially driving down or inflating the prices of coins, which are principally graded by Hall and CU's grading company, Professional Coin Grading Service ("PCGS") and sold on CCE.

8. On June 1, 2010, Plaintiffs were locked out of the CCE marketplace by Defendants. As a result of this, Plaintiffs could no longer engage in online trading in real time as they had done in the past. They also could not continue the same business relationship that they had built over years with their customers as they had done before.

9. As a direct and proximate result of the acts and omissions of Defendants, some of which date back to 2008, Plaintiffs have sustained loss in the form of monetary damages and economic harm in an amount to be proven at trial. Plaintiffs' losses are based, in part, on the following facts. From October 2010 to September 2011, Plaintiffs' sales were approximately $35 million in the rare coin and bullion business. More recently, from January 2012 to March 2012, Plaintiffs sold $1,187,000 in this business.

10. Plaintiffs are also entitled to injunctive relief, restitution, attorney's fees, and costs as explained below.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**DEFENDANTS' CONTROL OF THE COIN MARKET IS AT THE EXPENSE OF OTHER DEALERS IN GOOD STANDING**

11. CCE is a sight-seen/unseen trading system in the United States for rare coin dealers and customers. CCE's messaging system (CCE/FACTS) is the largest dealer-to-dealer numismatic network in the world. This messaging system allows a dealer to find a unique coin or buyer almost instantly. Real time trades are imperative to coin dealers because the price of precious metals is extremely volatile.

12. Deals can be consummated off the CCE trading platform; however, online trading, as is provided by CCE, is the principal way to transact business for dealers, such as Plaintiffs herein, because the price of metal fluctuates at any given time.

13. Consistent with its online trading services, CCE is the main marketplace for dealers, such as Plaintiffs herein, to compete for the sale and purchase of rare coins.

14. In 2005, Hall, through his company CU, purchased CCE from American Teleprocessing Corporation.

15. Right before he purchased CCE, in 2004, Hall resigned as a member of the Professional Numismatic Guild ("PNG"). Members of PNG are subject to binding arbitration.

16. Before and after 2005, Plaintiffs executed contracts for the purchase of rare coins and bullion on the CCE platform in a commercially reasonable and honorable fashion with no customer complaints.

17. WRCG was a CCE member in good standing for 35 years that conducted $10-15 million in volume annually on CCE. This was as much as ten-times the amount of business compared to other dealers. In light of its volume of trading, WRCG is one of Hall and DHRC's biggest competitors.

18. Notwithstanding Plaintiffs' efforts to conduct its business in a commercially reasonable and honorable fashion, Plaintiffs engaged in coin deals with Hall and DHRC online that went awry. For instance, WRCG accepted their offer to sell 11 gold commemorative coins. Hall reneged on the contract and only delivered one of these coins to WRCG. Hall intended for this and other offers to be shams that would drive down the market prices of gold and other precious metals. Hall has been investigated by the Federal Trade Commission ("FTC") for similar actions.

19. In 2010, Defendants directed CCE's President, East, to terminate WRCG's membership on the CCE trading platform without cause. The termination of WRCG's membership effectively prevented Plaintiffs from continuing some of their well-established business ventures with online clients and allowed Hall and DHRC to seize Plaintiffs' business.

**JURISDICTION AND VENUE**

20. Plaintiffs seek compensatory relief for lost profits and damages from 2008 to the present date in an amount to be proven at trial but known to exceed the jurisdictional requirements of this Court. This Court has subject matter jurisdiction

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

pursuant to 28 U.S.C. §§ 1331 and 1337. The Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

21. The Court has personal jurisdiction over Defendants based on the activities described in this Complaint, all of which were performed within this jurisdiction.

22. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)-(c).

**THE PARTIES**

23. As alleged herein, the parties are in the business of trading, buying, and selling certified and non-certified coins.

24. At all material times, Dominick, a citizen of the State of Florida, and Hall, a citizen of the State of California and Orange County resident, were both full-time, professional numismatists and coin dealers with extensive experience and trading references from current dealers in the rare coin and bullion business.

25. Dominick has been a rare coin dealer for 47 years. At all material times, Dominick has been a member of the prestigious Professional Numismatists Guild ("PNG") and served as an arbitrator on PNG. Dominick is also a lifetime member in good standing of no less than 11 Numismatic Associations.[2] Dominick won top awards for his exhibitions at Numismatic conventions. He has displayed coins for sale at over 50 ANA National Conventions. Over the years, he has promoted coin collecting through lectures to The Boy Scouts and local coin clubs.

26. At all material times, Hall has been the President and Chief Executive Officer of CU, and the Director of both CU and CCE. Hall has been in the gold commemorative coin business for at least 30 years. Hall is a founding member and the Chief Executive Officer of PCGS, which is one of the select grading companies that

---

[2] The 11 Numismatic Associations are The Mid Atlantic Numismatic Association, The Canadian Numismatic Association, Michigan State Numismatic Society, Central State Numismatic Society, Garden State Numismatic Association, Indiana State Numismatic Association, Great Eastern Numismatic Association, Georgia Numismatic Association, American Numismatic Association, Florida United Numismatists, and National Silver Dollar Round Table.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy, Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

Defendants accept coins from on the CCE trading platform. At all material times, Hall was aware that Plaintiffs met the requirements to be members of CCE.

27. Like Dominick and Hall, the corporate parties, WRCG and DHRC, are similarly situated (i.e., they are direct competitors of one another).

28. At all material times, WRCG was and is a New Jersey corporation authorized to conduct business in the coin and bullion industry in California. WRCG's principal place of business is Old Tappan, New Jersey.

29. At all material times, DHRC was and is a California corporation authorized to do business in Newport Beach, California.

30. At all material times, CU was and is a Delaware corporation in the coin industry with its principal place of business in Santa Ana, California. CU owns CCE, another Delaware corporation based in Santa Ana, California. CU also owns PCGS, the main grading service used on CCE. Hall runs CU.

31. East, a citizen of the State of California and resident of Orange County, is the President of CCE and is the person charged with the responsibility of sending notice to dealers whose membership with CCE has been terminated. At all material times, East was aware that Plaintiffs met the requirements to be members of CCE.

32. Brandow, a citizen and resident of the State of Texas, is the Sales Director of CCE and oversees CCE's membership and sales. At all material times, Brandow was aware that Plaintiffs met the requirements to be members of CCE.

33. The true names, capacities, and identities of Defendants Does 1-10 are unknown to Plaintiffs at this time. Plaintiffs will amend this Complaint to set their true names, capacities, and identities when that information is ascertained. Plaintiffs are informed and thereon allege that each fictitiously named Doe Defendant is liable to Plaintiffs under the causes of action alleged in this Complaint.

34. At all material times, each named Defendant was the agent, servant, employee, partner, or member of a joint venture with the other Defendants. At all

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

material times, each of these Defendants was acting within the course and scope of said agency, service, employment, partnership, or joint ventureship.

35. At all material times, each named Defendant was also acting in its independent and individual capacity.

**DEFENDANTS CONTROL WHO CAN TRADE ON THE WORLD'S LARGEST TRADING PLATFORM IN AN EFFORT TO CREATE A MONOPOLY FOR HALL AND DHRC OVER COIN SALES AND TO ELIMINATE THEIR COMPETITION**

36. Defendants are controlling the membership of CCE in order to create a monopoly in the rare coin and bullion industry. Hall and CU own CCE. East and Brandow oversee the decisions to admit a dealer as a CCE member and/or to terminate membership.

37. Defendants set forth requirements for a coin dealer such as WRCG to become a member of CCE. These requirements are: an applicant must be (1) a full-time numismatic firm, (2) an established place of business longer than one year, (3) obtain three member firm dealer references, and (4) have previous satisfactory membership as a principal or executive of a member firm.

38. Defendants determine whether a member can be an associate member or a member firm. Associate members may view prices (with dealer IDs), but cannot post prices or execute trades with full-member firms. In the alternative, member firms may post bids and ask prices and execute online trades with other full members.

39. Despite meeting these requirements, Defendants can still determine to deny or terminate membership to a qualified dealer. Defendants have unbridled discretion to determine who can become a member in the first place, and what tier of membership a dealer falls under.

40. Similarly, Defendants have total discretion and can terminate membership with or without cause.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

41. WRCG was a full-fledged member firm of CCE for decades before Defendants took over the platform.

42. Out of the blue, on June 1, 2010, Defendants locked out Plaintiffs from the CCE system in an effort to stop them from continuing their business on CCE.

43. Defendants allow associated dealers of DHRC (which Plaintiffs are not) to be members of CCE. Some of these associated dealers are bankrupt, have been accused of grand theft, and/or have felony records. Nevertheless, Defendants allow these dealers to continue to conduct business on CCE because of their relation to DHRC and Hall.

44. Defendants also allow certain dealers in Newport Beach, California to stay on CCE, despite investigations against them by the FTC for allegedly creating an artificial market, false advertising, forming a Ponzi scheme, and/or failing to make required disclosures to consumers.

45. DHRC and Hall have also been under investigation by the FTC.

46. Defendants have allowed dealers, who posted messages with insulting and untruthful derogatory statements about Plaintiffs on the CCE message board open to all members, to continue to do business on CCE, even after Plaintiffs complained about this and were full-time members of CCE. Defendants did not immediately force these dealers to stop their improper behavior because Defendants wanted to tarnish Plaintiffs' business reputation by way of these detrimental postings.

47. Defendants have allowed firms that do not meet CCE's membership requirements to be full-time members. Full-time members of CCE have included firms who have been in business for less than one year. Members of CCE have also included firms with less than $25,000 in total assets at the time they applied for membership.

48. Defendants have allowed dealers with a plethora of customer complaints to engage in online trading, with no repercussion.

49. However, when Plaintiffs brought to Defendants' attention that there were improper customer complaints made against them and requested an arbitration hearing (as permitted in CCE's rules), this request was readily dismissed.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

50. Despite all of these red flags regarding a dealer's ability to conduct business fairly and legally, Brandow and East continue to allow only Hall, DHRC, and their associated dealers – not Plaintiffs - to trade on CCE.

51. Defendants' efforts to control which dealers can trade in the coin market is intended to create a monopoly for Hall and DHRC and unlawfully eliminate their competition.

**DEFENDANTS CONTROL MEMBERSHIP IN ORDER TO UNFAIRLY ALLOCATE SALES AND PURCHASES AMONG MEMBERS WITH WHOM THEY HAVE ENTERED INTO A COVERT AGREEMENT TO LIMIT COMPETITION**

52. There are over 100,000 bid and ask prices on CCE at any given time.

53. A single transaction on CCE can cover a full member firm's monthly membership fee of $425.

54. CCE's Certified Quote System ("CQS") provides price information and the necessary forms and communications software to execute trades with other CCE members.

55. Despite this volume and resources, Defendants unilaterally and without explanation or justification determine which members of CCE may post bids and ask prices, and execute online trades with other full members.

56. Defendants control the pool of dealer members so that these transactions are almost always made by Hall, DHRC, or their associated dealers.

57. Defendants have entered into agreements with this select group of dealers to eliminate competitors, such as Plaintiffs.

58. Defendants have embarked in this covert arrangement in order to fix prices and compete unfairly with other dealers, such as Plaintiffs.

///

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**DEFENDANTS UNFAIRLY CONTROL GRADING, MARKETING, ADVERTISING, AND THE SALE OF RARE COINS IN CONTRAVENTION OF FAIR TRADE LAWS**

59. The CCE trading rules provide that CCE generic market members do not have trading limits.

60. CCE generic market members may post bids and ask prices on the CCE generic section of CCE.

61. Only member firms, who are hand-selected by Defendants, may execute trades on CCE.

62. Other members are not allowed to purchase more than $50,000 in coins in a single trading day for bids posted, without the express consent of CCE.

63. CCE may assign credit limits to each member over which the member may not post bids.

64. Despite these rules, Defendants have not restricted the sales of Hall or DHRC on CCE.

65. Apart from giving Hall and DHRC carte blanche to make sales on CCE, Defendants also allow Hall and DHRC to dictate which grading services to use, notably Hall's own company, PCGS.

66. Hall is the Chief Executive Officer of PCGS.

67. PCGS is owned by CU and is a sister company of CCE.

68. These relationships naturally cause Defendants to grade and price coins in a biased and inconsistent matter that is not necessarily aligned with market conditions, but instead unilaterally benefits Hall and sales through his dealer company, DHRC.

69. These arbitrary practices are meant to artificially create a monopoly for Hall in the coin marketplace.

///

///

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy, Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

## DEFENDANTS CONTROL COIN PRICING

70. Price fixing is the collaboration among competitors for the purpose of raising, depressing, fixing, or stabilizing the price of a commodity. Price fixing is a per se violation of antitrust and/or unfair competition laws. There is no defense for price fixing.

71. An agreement of competitors to use list prices as a guideline is an exchange of price information that hurts the market and, therefore, is unlawful.

72. Time is of the essence in the execution of all coin trades because the value of precious metals fluctuates non-stop.

73. Live trading occurs daily on CCE. Trading days on the CCE platform are Monday through Friday, excluding federal holidays, between 12 noon and 5 p.m. Eastern time.

74. On an average trading day, over 500 dealers all over the United States view messages to buy and sell coins instantly.

75. Most of the trading on CCE is executed on the bid side.

76. Hall and DHRC have used online trading to drive down the price of precious metals and not go through with accepted offers, as described above with the example of the commemorative coin incident.

77. Hall and DHRC have found ways to lower coin prices without incurring a loss in order to force their competitors to lower their prices, sell the coins at a discounted price, and lose profits that they would not have suffered but-for Hall and/or DHRC's action of posting sham offers.

78. In addition, because bids are opened and closed in real time, access to the price list on CCE critically affects numismatic services in the United States.

79. Defendants claim that the CCE list contains the latest spot metal and bullion coin prices.

80. However, this list is only available in full to CCE members. The list changes all the time. CCE provides only members with tick-by-tick prices on gold,

silver, platinum, and palladium directly on their computer screens in real time, while markets are open. Member dealers can post their price differential off the spot price, and their prices will automatically be updated in selected bullion-related coins.

81. CCE reports a sample of its prices to the Associated Press and Bloomberg, after bid and ask information has been acquired. Defendants pick which prices to disclose.

82. These prices form the basis of many price-reporting services. Transactions that occur outside of the CCE network are based on CCE prices.

83. By disclosing prices on a selective basis and making sham offers, Defendants are engaged in price fixing activities and have entered into agreements with associated competitors to use CCE's list as an arbitrary guideline in the coin market.

**FIRST CAUSE OF ACTION**

**VIOLATION OF SECTION 1 OF THE SHERMAN ACT (15 U.S.C. § 1)**

**(Against Defendants Hall and DHRC)**

84. Plaintiffs reallage and incorporate by reference all of the above allegations.

85. Section 1 of the Sherman Act prohibits specific means of anticompetitive conduct. Section 1 has three elements: (1) an agreement, (2) which unreasonably restrains competition, and (3) which affects interstate commerce.

86. The Sherman Act prohibits conduct which unfairly tends to destroy competition. Acts by a monopolist to artificially preserve his status, or nefarious dealings to create a monopoly, are illegal under this law. Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447 (1993).

87. Defendants have agreed to collectively limit Plaintiffs' access to customers on CCE and make false statements about Plaintiffs' business practices in the rare coin market in order prevent Plaintiffs from doing business on the world's largest trading platform, CCE, coin trades and transactions of which are executed across state lines in the United States .

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

88. Defendants entered into this collective agreement with other member dealers as well, including dealers who have filed for bankruptcy, have a felony record, and/or have been investigated by the FTC. Defendants have done so in an effort to secretly divide and distribute the customers on CCE among themselves. Allocating the available market is patently anticompetitive and illegal per se.

89. Defendants limit what coins may be purchased on CCE; namely, those that are graded by select grading companies – particularly PCGS which is directed by Hall. By this conduct, Defendants are fully aware of and in fact intend to create a monopoly for Hall and DHRC.

90. As a direct and proximate result of the acts and omissions of Defendants as alleged herein, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**SECOND CAUSE OF ACTION**

**VIOLATION OF SECTION 2 OF THE SHERMAN ACT (15 U.S.C. § 2)**

**(Against Defendants Hall and DHRC)**

91. Plaintiffs reallage and incorporate by reference all of the above allegations.

92. Section 2 of the Sherman Act deals with end results that are anticompetitive in nature. Section 2 has two elements: (1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. 15 U.S.C. § 2.

93. Alternatively, Section 2 may be violated if there is an attempt to monopolize.

94. The Supreme Court has defined monopoly power as the power to control prices or exclude competition. As a practical matter, such power may be measured by the alleged monopolist's share of the relevant market.

///

95. Acts that constitute willful acquisition or maintenance of a monopoly power include acquisitions of competitors, exclusive dealing arrangements, and/or below cost pricing tactics with a reasonable prospect of recoupment.

96. To prove an attempt to monopolize, plaintiffs must establish that defendants had a specific intent to achieve a monopoly; that they acted in an anticompetitive manner designed to injure their actual or potential competition; and that there was a dangerous probability that monopoly power would in fact be achieved.

97. As described above, Defendants have engaged in illegal price fixing and market allocation over the course of years in order to give Hall and DHRC monopoly power on CCE to the detriment of their dealer competitors such as Plaintiffs.

98. As a direct and proximate result of the acts and omissions of Defendants as alleged herein, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**THIRD CAUSE OF ACTION**

**VIOLATION OF SECTION 2 OF THE CLAYTON ACT (15 U.S.C. § 14)**

**(Against Defendants Hall and DHRC)**

99. Plaintiffs reallage and incorporate by reference all of the above allegations.

100. Under the Clayton Act, exclusive dealing agreements are impermissible and constitute antitrust activities because they tend to lessen competition or create a monopoly.

101. An exclusive dealing agreement arises when a person engaged in commerce, in the course of such commerce, makes a sale of contract for the sale of goods in the United States, or fixes a price charged therefor, or discounted from, or rebated upon, such price, on the understanding that the purchaser shall not use or deal in the goods of a competitor, where the effect of such sale or understanding may be to substantially lessen competition or tend to create a monopoly. 15 U.S.C. § 14.

///

102. Hall and DHRC have entered into exclusive dealing agreements with associated dealers as well as dealers who posted derogatory statements about Plaintiffs on the CCE message board, as described above.

103. These dealing agreements exclude and prevent Plaintiffs from executing sales and purchases with dealers who are members of this exclusive agreement and to lock out Plaintiffs from coin customers all over the United States as well as the worldwide customer base on CCE.

104. Plaintiffs have tried to purchase rare coins from Hall himself, after posting a winning bid. However, Hall refused to deliver the goods that were purchased by Plaintiffs. Hall did not complete this transaction because Plaintiffs are not a part of the exclusive dealing agreement he has with other dealers.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

105. As a direct and proximate result of the acts and omissions of Defendants as alleged herein, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

106. Plaintiffs are entitled to treble damages. 15 U.S.C. § 15.

107. Plaintiffs are entitled to reasonable attorney's fees and costs.

108. Plaintiffs request a court order restraining Defendants from pursuing exclusive dealing agreements because these agreements put Plaintiffs at a competitive disadvantage on the CCE trading platform. 15 U.S.C. § 26.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF LANHAM ACT (15 U.S.C. §§ 1051 *et seq.*)**

**(Against Defendant Hall)**

109. Plaintiffs reallage and incorporate by reference all of the above allegations.

110. The Lanham Act is violated when: (1) an advertiser makes false statements of fact about its product; (2) the false advertisements actually deceive or have the capacity to deceive a substantial segment of the target population; (3) this deception is material; (4) the falsely advertised product is sold in interstate commerce; and (5) plaintiffs are injured as a result of the deception. 15 U.S.C §§ 1051 *et seq.*

111. Hall, as both the Chief Executive Officer of PCGS and the owner of CCE, advertises on the CCE website that the grading service provided by PCGS (his company) is impartial and that dealers can become members of the website so long as they meet the membership requirements.

112. These two representations by Hall on the CCE trading platform are false. Hall, as a dealer through his company DHRC, has a self-interest in making sure that the coins he sells receive a higher grade and are sold at a higher price. Hall also has a personal interest in finding and implementing ways to eliminate his biggest competitors such as Plaintiffs on the trading platform.

113. These two false advertisements deceived members on the website, including Plaintiffs who were once members, because it has caused them to engage in transactions with Hall trusting that the CCE coin list and PCGS grading service were both impartial and consistent with market conditions.

114. The deception was material because it caused members, including Plaintiffs, to pay substantial membership fees and to sell coins based on the grading provided by PCGS and within the price range listed on CCE's coin list.

115. Coins graded by PCGS are sold on CCE on the World Wide Web by customers in various states of the United States.

116. As a direct and proximate result of the acts and omissions of Defendants, including Defendants' false advertisements as alleged herein, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**

**UNREASONABLE RESTRAINT OF TRADE**

**(CAL. BUS. & PROF. CODE § 16720)**

**(Against All Defendants)**

117. Plaintiffs reallage and incorporate by reference all of the above allegations.

118. The Cartwright Act bars any agreement among competitors that would serve to fix prices or allocate customers or markets. Cal. Bus. & Prof. Code § 16720.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

119. As described above, Defendants have engaged in price fixing and exclusive dealing agreements to the financial detriment of Plaintiffs.

120. As a direct and proximate result of the acts and omissions of Defendants as alleged herein, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**UNFAIR COMPETITION (CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*)**

**(Against Defendants Hall and DHRC)**

121. Plaintiffs reallage and incorporate by reference all of the above allegations.

122. California Business and Professions Code sections 17200 *et seq.* prohibit unfair competition. Unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

123. Defendants engaged in unfair competition by controlling the dealers who can transact business on the world's largest trading platform, through their arbitrary and selective membership process.

124. Defendants engaged in unfair competition by posting and advertising sham offers on the CCE trading platform and limiting disclosure of price information in an effort to fix prices.

125. As a direct and proximate result of the acts and omissions of Defendants, including Defendants' unfair competition as alleged herein, Plaintiffs seek injunctive relief. Equitable relief is necessary because relief at law is inadequate. Plaintiffs seek injunctive relief that prohibits Defendants from applying an arbitrary and selective membership process on the CCE trading platform and from limiting the disclosure of price information to CCE members only as well as from posting a biased price list. Plaintiffs also seek restitution in an amount to be proven at trial.

///

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**SEVENTH CAUSE OF ACTION**

**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(Against All Defendants)**

126. Plaintiffs reallage and incorporate by reference all of the above allegations.

127. A prima facie case for intentional interference with prospective economic advantage requires a showing of: (1) the existence of a valid business expectancy of plaintiff; (2) defendant's knowledge of the expectancy; (3) intentional interference by defendant that induces termination of the expectancy; and (4) damages to plaintiff.

128. Plaintiffs had a valid business expectancy to continue to sell coins to customers and purchase from other dealers in real time on the world's largest trading platform because they have been in the rare coin business and in good standing for 47 years.

129. Defendants knew that Plaintiffs had this business expectancy because Plaintiffs were CCE members for several years and all business transactions were completed and approved using Defendants' online forms.

130. Defendants intentionally interfered with Plaintiffs' business expectancy by entering into an agreement with other dealers to post false, insulting and derogatory statements about Plaintiffs' business practices, which were viewable by other dealers and consumers for several days. Defendants did not take immediate action to have these posts removed despite knowing about them for some time. This tarnished Plaintiffs' reputation as a coin dealer.

131. By allowing other dealers to tarnish Plaintiffs' reputation through the posting of false statements, Defendants prevented Plaintiffs from continuing to do business with dealers and customers as they had previously done over the course of several years.

///

132. As a direct and proximate result of the acts and omissions of Defendants as alleged herein, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**

**NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(Against All Defendants)**

133. Plaintiffs reallage and incorporate by reference all of the above allegations.

134. To establish a prima facie case for negligent interference with prospective economic advantage, the following elements must be proven: (1) that there was a valid business expectancy of plaintiff; (2) that defendant had knowledge or should have known of this expectancy; (3) that defendant failed to act with reasonable care such that defendant induced termination of the expectancy; and (4) damages to plaintiff.

135. Plaintiffs had a valid business expectancy to continue to sell coins to customers and purchase from other dealers in real time on the trading platform as this is the normal method of transacting business by coin dealers.

136. Defendants knew or should have known that Plaintiffs had this business expectancy because Plaintiffs were CCE members for several years and their prior online business transactions had been completed and approved using Defendants' online forms.

137. Defendants failed to act with reasonable care because by allowed dealers to continue to post false and misleading statements about Plaintiffs and to let those statements remain on a message board viewable by all members and consumers for several days, despite receiving notice from Plaintiffs that the information posted was wholly incorrect and harmful and needed to be removed immediately.

138. By allowing other dealers to tarnish Plaintiffs' reputation through the posting of false statements, Defendants prevented Plaintiffs from continuing to do business with dealers and customers as they had previously done over the course of several years.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

139. As a direct and proximate result of the acts and omissions of Defendants as alleged herein, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

**NINTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against Defendants CU, CCE, Hall, East, and Brandow)**

140. Plaintiffs reallage and incorporate by reference all of the above allegations.

141. The parties entered into a settlement agreement for legal fees, which provided in relevant part that Defendants could not seek subsequent recovery of attorney's fees that were already paid and resolved. The settlement agreement provides that the prevailing party is entitled to attorney's fees in order to enforce any term of this agreement. These are material terms of the settlement agreement.

142. Defendants filed a motion for attorney's fees seeking recovery for fees that had already been resolved once and for all under the settlement agreement.

143. Defendants' action of filing the motion for attorney's fees constitutes a material breach of the contract.

144. As a result of this breach, Plaintiffs must seek to enforce the terms of the settlement agreement and have been injured in a monetary amount to be proven at trial.

**TENTH CAUSE OF ACTION**

**CIVIL CONSPIRACY**

**(Against All Defendants)**

145. Plaintiffs reallage and incorporate by reference all of the above allegations.

146. Civil conspiracy imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 510-11 (1994).

147. A conspiracy renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he

or she was a direct actor and regardless of the degree of his or her activity. Doctors' Co. v. Superior Court, 49 Cal.3d 39, 44 (1989).

148. Plaintiffs must plead facts consistent with Federal Rule of Civil Procedure 11, showing that a conspiracy is plausible (and not merely conceivable). Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

149. The relevant market in this action is the world's largest trading platform for rare coin dealers, CCE.

150. At all material times, Defendants used their authority to enforce an unfair, biased and illegal structure, rules and practices on the CCE trading platform that violate well-held antitrust, unfair competition, and tort law, as explained above.

151. Defendants have done so in order to create a monopoly for Hall and DHRC and curtail their competition.

152. As a direct and proximate result of the acts and omissions of Defendants as alleged herein, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

153. The acts that make up Defendants' conspiracy were done intentionally and maliciously in an effort to put Plaintiffs at a competitive disadvantage in the rare coin business, as explained above. As a result of this intentional and malicious conduct, Plaintiffs are entitled to punitive and exemplary damages from Defendants in a sum according to proof.

**ELEVENTH CAUSE OF ACTION**

**AIDING AND ABETTING**

**(Against All Defendants)**

154. Plaintiffs reallage and incorporate by reference all of the above allegations.

155. Liability is imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

conduct, separately considered, constitutes a breach of a duty to the third person. Fiol v. Doellstedt, 50 Cal.App.4th 1318, 1325-26 (1996).

156. The relevant market in this action is the world's largest trading platform for rare coin dealers, CCE.

157. At all material times, Defendants used their authority to enforce an unfair, biased and illegal structure, rules and practices on the CCE trading platform that violate well-held antitrust, unfair competition, and tort law, as explained above.

158. Defendants have done so in order to create a monopoly for Hall and DHRC and curtail their competition.

159. At all material times, Defendants have known that their collective and individual actions to create a monopoly for Hall and DHRC by materially supporting and allowing price fixing, exclusive dealing arrangements, false advertising, breach of contracts, and related conduct, as explained above, violated tort law, constituted breach, and injured other dealers such as Plaintiffs.

160. Through these unlawful acts, Defendants have breached the duty owed to Plaintiffs not to support monopolies or impose a restraint on trade in the rare coin industry.

161. As a direct and proximate result of the acts and omissions of Defendants as alleged herein, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

162. Defendants aided and abetted one another with the intent to put Plaintiffs at a competitive disadvantage in the rare coin business, as explained above. As a result of this intentional and malicious conduct, Plaintiffs are entitled to punitive and exemplary damages from Defendants in a sum according to proof.

///

///

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

1. For monetary and compensatory damages in an amount to be proven at trial;
2. For treble damages;
3. For an injunction that prohibits exclusive dealing agreements, pursuant to the third cause of action;
4. For an injunction that prohibits Defendants from applying an arbitrary and selective membership process on the CCE trading platform, pursuant to the sixth cause of action;
5. For an injunction that prohibits Defendants from limiting the disclosure of price information to CCE members only, pursuant to the sixth cause of action;
6. For an injunction that prohibits Defendants from posting a biased price list, pursuant to the sixth cause of action;
7. For restitution in an amount to be proven at trial, pursuant to the sixth cause of action;
8. For reasonable attorney's fees;
9. For costs of suit; and
10. For such other and further relief as the Court may deem just and equitable.

DATED: May 31, 2012

EDGERTON & WEAVER, LLP

By: [signature]
Theodore C. Peters, Esq.
Elizabeth Del Cid, Esq.
Attorneys for Plaintiffs,
William Dominick and Westwood Rare Coin Gallery, Inc.

**DEMAND FOR JURY TRIAL**

Plaintiffs WILLIAM DOMINICK and WESTWOOD RARE COIN GALLERY, INC. hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: May 31, 2012

EDGERTON & WEAVER, LLP

By: [signature]
Theodore C. Peters, Esq.
Attorneys for Plaintiffs,
William Dominick and Westwood Rare Coin Gallery, Inc.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com