EDGERTON & WEAVER, LLP
THEODORE C. PETERS (CA Bar No. 235115)
ELIZABETH M. DEL CID (CA Bar No. 250962)
K. ADAM BLOOM (CA Bar No. 268899)
SABRYNE COLEMAN (CA Bar No. 271804)
2615 Pacific Coast Highway, Suite 300
Hermosa Beach, California 90254
Tel: (310) 937-2066 • Fax: (310) 937-2064
E-mail: tpeters@edgertonweaver.com

Attorneys for Plaintiffs,
William Dominick and Westwood Rare Coin Gallery, Inc.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

WILLIAM DOMINICK; and WESTWOOD RARE COIN GALLERY, INC.,

Plaintiffs,

vs.

COLLECTORS UNIVERSE, INC.; CERTIFIED ASSET EXCHANGE, INC. a/k/a CERTIFIED COIN EXCHANGE; DAVID HALL RARE COINS; DAVID HALL; CASSI EAST; and MICHAEL BRANDOW; and DOES 1 through 10, inclusive,

Defendants.

Case No. CV 12-04782 ODW (CWx)

**PLAINTIFFS WILLIAM DOMINICK AND WESTWOOD RARE COIN GALLERY, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

DATE: September 24, 2012
TIME: 1:30 p.m.
COURTROOM: 11
JUDGE: Hon. Otis D. Wright II

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

# TABLE OF CONTENTS

**Page**

## MEMORANDUM OF POINTS AND AUTHORITIES

I. INTRODUCTION ... 1
II. THE FAC STATES A CLAIM UNDER THE SHERMAN ACT ... 2
A. The FAC Sufficiently Alleges a Relevant Market ... 3
B. Plaintiffs Adequately Allege the Element of Market Power ... 5
C. The FAC Contains Sufficient Facts of an Antitrust Injury ... 7
D. Plaintiffs Properly Allege a Conspiracy under Sherman Act, § 1 ... 9
E. The FAC Adequately States a Claim under Sherman Act, § 2 ... 11
1. Monopoly Power ... 11
2. Essential Facility ... 12
III. THE FAC STATES A CLAIM UNDER THE CLAYTON ACT ... 15
IV. THE FAC STATES A CLAIM UNDER THE LANHAM ACT ... 17
V. THE FAC STATES A CLAIM UNDER CAL. B&P CODE § 16720 ... 19
A. Price Fixing ... 20
B. Exclusive Dealing ... 20
VI. THE FAC STATES A CLAIM UNDER B&P CODE §§ 17200, ET SEQ. ... 21
VII. THE FAC STATES A CLAIM FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE ... 22
VIII. THE FAC STATES A CLAIM FOR BREACH OF CONTRACT ... 24
IX. THE FAC IS PROPER AS AGAINST INDIVIDUAL DEFENDANTS ... 25
X. CONCLUSION ... 26

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

Alaska Airlines, Inc. v. United Airlines, Inc.
948 F.2d 536 (9th Cir. 1991) .......................................... 12

Bell Atlantic Corp. v. Twombly
550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) ...... 3

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.
429 U.S. 477, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977) .................. 7

Carafano a/k/a Chase Masterson v. MetroSplash.com, Inc.
339 F.3d 1119 (9th Cir. 2003) ..........................................

Copperweld Corp. v. Independence Tube Corp.
467 U.S. 752, 104 S. Ct. 2731, 81 L. Ed. 2d 628 (1984) ................ 9

Cyntegra, Inc. v. Idexx Laboratories, Inc.
520 F.Supp.2d 1199 (C.D. Cal. 2007) .................................. 15

Golden Gate Pharmacy Services, Inc. v. Pfizer, Inc.
433 Fed. Appx. 598 (9th Cir. 2011) .................................... 4

JM Computer Services, Inc. v. Schlumberger Tech., Inc.
1996 U.S. Dist. LEXIS 21885 (N.D. Cal. 1996) ......................... 16

John P. Villano Inc. d/b/a JP Productions v. CBS, Inc. d/b/a WCBS-FM
176 F.R.D. 130 (S.D. NY 1997) .......................................... 18

Kendall v. Visa U.S.A., Inc.
518 F.3d 1042 (9th Cir. 2008) .......................................... 9

Malaney v. UAL Corp.
434 Fed. Appx. 620 (9th Cir. 2011) .................................... 17

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**Page**

MCI Communications Corp. v. American Telephone & Telegraph Co.
708 F.2d 1081 (7th Cir. 1983) .......................................... 12

Newcal Industries, Inc. v. Ikon Office Solution
513 F.3d 1038 (9th Cir. 2008) .......................................... 3

Olympia Equipment Leasing Co. v. Western Union Telegraph Co.
797 F.2d 370 (7th Cir. 1986) .......................................... 12

Thurman Industries v. Pay 'N Pak Stores, Inc.
875 F.2d 1369 (9th Cir. 1989) .......................................... 3

TrafficSchool.com, Inc. v. Edriver Inc.
653 F.3d 820 (9th Cir. 2011) .......................................... 18

Twin Laboratories, Inc. v. Weider Health & Fitness
900 F.2d 566 (2nd Cir. 1990) .......................................... 12

Vess v. Ciba-Geigy Corp. USA
317 F.3d 1097 (9th Cir. 2003) .......................................... 18

Western Sugar Cooperative v. Archer-Daniels-Midland Co.
2012 U.S. Dist. LEXIS 109927 (C.D. Cal. July 31, 2012) ......... 17

Zeran v. America Online, Inc.
129 F.3d 327 (4th Cir. 1997) .......................................... 23

**California Cases**

Della Pena v. Toyota Motor Sales USA, Inc.
11 Cal.4th 376, 902 P.2d 740, 45 Cal. Rptr. 2d 436 (1995) .......... 23

**Other State Cases**

McCready v. eBay
217 Ill. 2d 566, 844 N.E.2d 39 (2005)........................................ 23

**Page**

**Other Federal Authority**

15 U.S.C. §§ 1-2 .......... 2

15 U.S.C. § 14 .......... 15

15 U.S.C. § 24 .......... 25

15 U.S.C. §§ 1051 .......... 17

47 U.S.C. § 230 .......... 23

**Other Authorities**

F.R.C.P. Rule 9(b) .......... 17, 18, 19

F.R.C.P. Rule 12(b)(6) .......... 4

**California Statutes**

Cal. Bus. & Prof. Code § 16720 .......... 19

Cal. Bus. & Prof. Code §§ 17200, et seq. .......... 19

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

# I. INTRODUCTION

Defendants have caused significant harm to Plaintiffs as well as the public as a consequence of their conduct as set forth in Plaintiffs' First Amended Complaint ("FAC"). By covertly controlling prices and competition, Defendants have intentionally manipulated the market in which numismatic materials are bought and sold in real-time. Further, by arbitrarily selecting which dealers can compete in that market, Defendants have not only eliminated their largest competitors, but have also deceived other dealers of numismatic materials into believing that the online, real-time platform Defendants provide is fair and impartial, when in fact it is not.

In their Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion"), Defendants suggest that the allegations are "absurd" and wholly lacking in merit. As demonstrated herein, however, Defendants' Motion utterly fails to demonstrate that *any* of Plaintiffs' claims are deficient. Upon review of the FAC, and then, Defendants' Motion, it is abundantly clear that Defendants did not bother to actually read the FAC. A comparison of their original Motion, filed on July 19, 2012 and the present Motion, filed August 23, reveals that Defendants cite the same law and draw the same conclusions now as they did on July 19. In fact, Defendants' two motions are virtually identical despite the fact that *Plaintiffs meticulously responded to, and cured, each and every perceived defect* when they filed the FAC on August 9. Most disturbing is that notwithstanding the new facts pled, Defendants continue to (falsely) assert that Plaintiffs have failed to allege this fact or that when such facts are clearly set forth in the FAC.

Defendants also erroneously suggest that this case is nothing more than a failed attempt to resuscitate claims that were heretofore dismissed by the California Superior Court. The substantial differences are evident upon a simple comparison of the pending FAC and the Second Amended Complaint Plaintiffs filed in the state court action in May 2011. See Defendants' Request For Judicial

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

Notice, ¶ 7, Exh. G (Dkt. 29-3 at p. 66). The FAC asserts new and never before raised federal claims under the Sherman, Clayton and Lanham Acts—claims that are more appropriately brought before this Court. Defendants boldly suggest that the judge in the state court action agreed that the claims in that action were deficient. The truth is that Plaintiffs dismissed the case voluntarily before the state court ever considered the revised allegations of the Second Amended Complaint. See Defendants' Request for Judicial Notice, ¶¶ 8 and 10, Exhs. H and J.

Accordingly, Defendants' Motion should be denied in its entirety. Defendants' Motion is legally and factually unsound. Defendants heavily rely on inapplicable authority and repeatedly misconstrue rules of law governing the claims at issue in an effort to mislead the Court. As set forth below, a review of the FAC demonstrates that Plaintiffs have amply pled the requisite facts and elements for each of their causes of action.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

## II. THE FAC STATES A CLAIM UNDER THE SHERMAN ACT

Defendants[1] have not and cannot demonstrate any valid reason to dismiss Plaintiffs' causes of action under 15 U.S.C. §§ 1-2 (the "Sherman Act"). Defendants assert that Plaintiffs' Sherman Act claims should be dismissed because the FAC fails to allege the requisite elements of an antitrust violation, namely: (1) the relevant market; (2) Hall's and DHRC's power over such market; and (3) the existence of an "antitrust injury." See Motion, pp. 6-8. Defendants offer no substantive analysis regarding these purported deficiencies and simply cite to rules of law, most of which are wholly inapplicable and irrelevant to the claims at issue. As demonstrated herein, it is abundantly clear that Plaintiffs have sufficiently alleged the facts necessary to establish an antitrust claim under the Sherman Act.

[1] For the sake of brevity, as used herein, "Defendants" shall refer only to those defendants against whom each respective causer of action is asserted.

### A. The FAC Sufficiently Alleges a Relevant Market

To properly plead a relevant market in an antitrust action, Plaintiffs must allege both a geographic market and a product market. See Newcal Industries, Inc. v. Ikon Office Solution, 513 F.3d 1038, 1054 (9th Cir. 2008). While the allegations must rise above mere speculation, there is no requirement that antitrust elements be pled with specificity. See, e.g., Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 940 (2007) and Newcal, 513 F.3d at 1045. The validity of the "relevant market" is typically a factual, rather than legal, element. Therefore, a complaint that sets forth an alleged market will survive a motion to dismiss unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect. Id. at 1045.

*Despite clear and repeated allegations of the same*, Defendants erroneously assert that the FAC fails to plead a cognizable relevant market under the Sherman Act. The FAC unambiguously identifies the relevant market as the market for real-time trading of numismatic materials in the United States. See FAC, ¶¶ 77-83. The FAC specifically sets forth several distinct features of the relevant market, including but not limited to, a *geographic* market (United States) (FAC, ¶ 81) and a *product* market (rare coins and other types of numismatic materials, including bullion, certified coins, bags, state quarters, eagles, foreign coins, and ancient currency traded in real-time) (FAC, ¶¶ 79 and 97).[2]

Defining the product market for antitrust purposes requires identifying the field of competition, i.e., the group of sellers/producers who have the actual or potential ability to deprive each other of significant levels of business. See Thurman Industries v. Pay 'N Pak Stores, Inc., 875 F.2d 1369, 1374 (9th Cir. 1989). Consumers do not define the boundaries of the market; the products or producers do. See, e.g., Newcal, 513 F.3d at 1045. As set forth repeatedly in the

---

[2] Paragraph 97 of the FAC defines numismatic material to include "raw coins." This is a typographical error and is intended to refer to "rare coins."

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

FAC, the relevant field of competition consists of real-time dealers of rare coins and other numismatic materials (such as Hall/DHRC and Dominick/WRCG), all of whom have the ability to deprive one another of business within the "real-time trading of numismatic materials" market, as evidenced by the very conduct from which this action arises. See, e.g., FAC, ¶¶ 1-7, 47, 82-84, 103, 161, 167, 201, 204, and 220.

The FAC further states that the platform for this market is the CCE online trading website, which is the dominant online dealer-to-dealer trading platform in the United States for numismatists to trade across interstate lines and the *only* platform that offers trading in real-time. See, e.g., FAC, ¶¶ 80-85, 88-90, and 244-45. The FAC also identifies the members of the market in which Defendants have power as dealers and consumers of numismatic materials who subscribe to the CCE website. See, e.g., FAC, ¶¶ 98, 141, 174-75, 181-82, 184, 227, 230, and 245. Contrary to Defendants' Motion, the FAC unambiguously alleges that the relevant market includes economic substitutes that are reasonably interchangeable by consumers for the same purposes, i.e., rare coins of similar grading and value that can be traded online by coin dealers and that can be used by consumers for the same purpose of collecting rare coins.[3] FAC, ¶¶ 98-99.

In a last-ditch effort to convince the Court that the FAC fails to address the "economic substitutes" element of the product market, Defendants rely on Golden Gate, an unpublished case. Motion, pp. 7-8. In Golden Gate, the Court granted a motion to dismiss under Federal Rule of Civil Procedure ("F.R.C.P."), Rule 12(b)(6) because in identifying "the pharmaceutical industry" as the relevant product market, the plaintiff failed to state a single fact indicating that all

[3] As noted in Newcal, upon which Defendants rely, even if the relevant market includes *all* numismatic materials, antitrust allegations may be premised on a *submarket* within the general market, i.e., the market specific to rare coins traded in real-time in the United States. See Newcal, 513 F.3d at 1045. So long as the FAC establishes a relevant general market, there is no requirement that the FAC allege the elements of a legally cognizable submarket for purposes of a motion to dismiss. Id.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

pharmaceutical products are interchangeable for the same purpose. See Golden Gate Pharmacy Services, Inc. v. Pfizer, Inc., 433 Fed. Appx. 598, 599 (9th Cir. 2011) (noting that while the market definition need not be pled with specificity, failure to state *any* facts of interchangeability renders a complaint "facially unsustainable and appropriate for dismissal"). Even if Golden Gate were controlling, which it is not[4], it nonetheless has no application to the instant matter since, as discussed above, Plaintiffs have alleged various facts that establish a "product market consisting of reasonably interchangeable goods." See FAC, ¶¶ 98-99. Accordingly, the Court should deny Defendants' Motion to the extent it depends upon the conclusion that the relevant market has not been properly pled.

### B. Plaintiffs Adequately Allege the Element of Market Power

Defendants also attempt to mislead the Court by falsely stating that the FAC fails to allege that any defendant has market power with respect to online trading of rare coins.[5] See Motion, p. 8. The Motion mischaracterizes the relevant product market as limited to "on-line [*sic*] dealer to dealer [*sic*] trading platforms in the rare coin business." See Motion, p. 8. As discussed above, the actual product market consists of *all* numismatic materials, including but not limited to rare coins, and only those materials traded in real-time, *a unique feature offered exclusively by CCE* that allows dealers and traders to capitalize or speculate on the instantaneous fluctuations in the price of precious metals. See FAC, ¶¶ 85, 244.

With respect to the *actual* product market, the FAC unambiguously sets forth numerous facts that establish Hall's/DHRC's power over this market. The

[4] Under Rule 36-3 of the United State Court of Appeals for the Ninth Circuit, unpublished dispositions and orders of this Court are citable if issued on or after January 1, 2007 but are not precedent except under the doctrine of law of the case or rules of claim or issue preclusion. U.S. Ct. App. 9th Cir., Circuit Rule 36-3(a)-(b). Unpublished dispositions and orders issued before January 1, 2007 may not be cited to this Court absent specific circumstances. Id. at 36-3(c).

[5] As the Sherman Act claims are brought only against Defendants Hall and DHRC, Plaintiffs need only allege that *Hall and DHRC* have power over the relevant market. That the FAC purportedly fails to allege that the other remaining defendants have market power is irrelevant.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

opening paragraphs of the FAC (FAC, ¶¶ 1-55) specifically identify each of the parties and their respective relationships to one another, to third parties, and to the market. Defendant Hall is a professional numismatist and rare coin dealer and owns DHRC, a rare coin and bullion dealer firm. FAC, ¶¶ 39, 41, and 43. Hall is also the president, director and chief executive officer of Defendant CU. FAC, ¶ 44. CU owns Defendant CCE and Hall is a director.[6] FAC, ¶ 49. Hall is also the founding member and chief executive officer of PCGS, the primary grading service of rare coins sold and purchased on the CCE website. FAC, ¶ 46. CU owns PCGS. FAC, ¶ 49.

Hall exploits his ownership and control of these entities to manipulate the relevant market in his favor. As chief executive officer of PCGS, Hall manipulates the grading and pricing of rare coins sold by his company, DHRC, and by competitors so that DHRC's coins are valued more highly than its competitors' comparable coins. FAC, ¶¶ 18 and 111. Also, as director of CCE and a close friend of its officers, East and Brandow, Hall arbitrarily determines which CCE applicants will be permitted to access CCE and which will be rejected and excluded from the real-time market for numismatic materials. FAC, ¶¶ 54-55, 113-14, 120, and 128-29. This explains why Defendants Hall and DHRC are approved CCE members *despite failing to meet CCE membership requirements*, while Plaintiffs Dominick and WRCG, direct competitors of Hall and DHRC, are denied CCE membership despite meeting the membership criteria. See FAC, ¶¶ 128, 131, and 133.

Additionally, the FAC states that "Hall and DHRC have market power in the market for real-time trading in numismatic materials because they impede the normal course of supply and demand in this market using their control over the

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

---

[6] CCE is operated by Hall, Defendant East (president) and Defendant Brandow (sales director). FAC, ¶¶ 54-55 and 104. Both East and Brandow are personal friends of Hall. FAC, ¶¶ 54-55.

CCE website."[7] See FAC, ¶ 101. Defendants acknowledge this allegation, but conveniently omit any reference to the immediately following paragraphs precisely directed to the element of market power, namely, Hall's/DHRC's unfettered ability to control the market, which stems from three distinct sources (FAC, ¶¶ 102-103): (1) a secret allocation agreement between Hall/DHRC and third party dealers whereby CCE customers are secretly divided and distributed among Hall, DHRC, and third party dealers (FAC, ¶¶ 15, 119, and 134-49); (2) a price fixing scheme whereby Hall, East and Brandow manipulate prices by requiring CCE customers to use PCGS (founded and run by Hall) as the primary coin grading service (FAC, ¶¶ 176-77 and 246-47) and then selectively withhold material information from the CCE price list (FAC, ¶¶ 138-43); and (3) an exclusive dealing agreement whereby Hall, DHRC and third party dealers monopolize sales of rare coins and other numismatic materials sold on the CCE website by excluding other dealers, including Plaintiffs, from the benefit of select deals posted on the CCE website (FAC, ¶¶ 17 and 150-56).

These actions independently and collectively establish the extent of Hall's/DHRC's strangle hold on the market and the specific manner in which Hall and DHRC are able to eliminate their biggest competitors. See FAC, ¶¶ 102-03. Accordingly, the Court should deny Defendants' Motion to dismiss Plaintiffs' Sherman Act claims since the FAC satisfies the pleading requirements of the "market power" element of an antitrust claim.

**C. The FAC Contains Sufficient Facts of an Antitrust Injury**

Again, Defendants erroneously assert that the FAC fails to allege "antitrust injury" when, in fact, the FAC is replete with allegations and facts establishing such injury. And again, Defendants cite to the wrong authority. Defendants rely

---

[7] Ironically, the Motion briefly references this allegation and summarily concludes, without any supporting analysis or comparison to the applicable case law, that such statement is insufficient and conclusory. See Motion, p.8. Defendants' cursory dismissal of this language is unwarranted.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

on Brunswick for the proposition that Plaintiffs must suffer an "antitrust injury" to prevail under Sections 1 and 2 of the Sherman Act. See Motion, p. 8 and Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977). Brunswick, however, involved claims under the *Clayton Act*, a related but different antitrust statute.[8] Notably, the Brunswick Court did not address such requirement in the context of claims brought under the *Sherman Act*.

Nonetheless, to the extent the Court finds that "antitrust injury" is a required element for a Sherman Act claim, the FAC sufficiently alleges such injury. Section VII of the FAC, entitled Antitrust Injury (FAC, ¶¶ 167-86), states that Hall's/DHRC's secret allocation agreement causes multiple antitrust injuries to Plaintiffs and other CCE customers by denying them free and open access to all U.S. rare coin dealers, the effect of which has substantially and severely constrained CCE customers' and Plaintiffs' ability to engage in interstate commerce. FAC, ¶¶ 167-69. This anticompetitive conduct has skewed market sales in favor of Hall, DHRC, and third party dealers. FAC, ¶ 170. Furthermore, CCE consumers, who expect to engage in voluntary transactions and pay reasonable prices driven by supply and demand, are secretly being forced to purchase rare coins at a higher price in transactions driven by the specific business interests of Hall, DHRC, and third party dealers rather than by the honest operation of the market. FAC, ¶¶ 171-73.

Ignoring these allegations, Defendants focus solely on Plaintiffs' standing to bring this antitrust allegation—namely, whether Plaintiffs have been personally injured as a result of Defendants' anticompetitive behavior. See Motion, p. 8. Indeed, the FAC states that Plaintiffs were denied access to the CCE network

[8] Though the complaint in the trial court asserted violations under the Sherman Act, the issue on appeal was solely with respect to the claims brought under the Clayton Act. Id. at 481, n. 3. The Brunswick Court specifically held that a plaintiff must prove antitrust injury to recover treble damages under Section 7 of the Clayton Act (violations regarding acquisitions by one corporation of stock of another). Id. at 489.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

when their membership was terminated in 2010. FAC, ¶¶ 21 and 131. Over the course of their 35-year tenure with CCE, Plaintiffs earned between 10 to 15 million dollars in annual sales on CCE. FAC, ¶¶ 71-72. After their CCE membership was revoked in 2010, they were no longer able to conduct business through the leading online numismatic network.[9]

While the FAC includes allegations of individualized injury, such allegations do not negate or otherwise invalidate the *distinct, additional* allegations in the FAC establishing the ancillary injury to competition caused by Defendants' anticompetitive behavior. *That Plaintiffs were themselves harmed by Defendants' anticompetitive actions does not preclude a generalized injury to the relevant market as a whole.* To the contrary, it further demonstrates the extent of Defendants' influence over the market and the precise manner in which Defendants' competitors, and therefore competition in general, are directly harmed by Defendants' anticompetitive behavior.

Accordingly, Defendants' Motion should be denied because: (1) Defendants have not demonstrated that "antitrust injury" is an element under the *Sherman Act*; and alternatively, (2) to the extent the Court finds that "antitrust injury" *is* an element, Plaintiffs have adequately (and repeatedly) alleged that Hall's/DHRC's actions have caused the requisite injury to competition.

**D. Plaintiffs Properly Allege a Conspiracy under Sherman Act, § 1**

Defendants argue that the FAC does not state a claim under Section 1 of the Sherman Act because it does not allege a proper conspiracy between proper conspirators. See Motion, pp. 9-10. True to form, Defendants again misrepresent the applicable law governing Sherman Act claims. Similarly, Defendants grossly

[9] Specifically, Plaintiffs could no longer participate in the market for *real-time* trading of rare coins and other numismatic materials, an invaluable and wholly unique market available solely through CCE. FAC, ¶ 244.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

distort the allegations in the FAC in yet another failed attempt to mislead the Court.

First, Defendants falsely state that a Section 1 claim requires allegations of a conspiracy that unreasonably restrains trade. See Motion, p. 9. To the contrary, Sherman Act claims may be premised on *either* a contract *or* a conspiracy to unreasonably restrain trade. See Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008). As noted above, the FAC includes extensive discussion of the secret allocation and exclusive dealing agreements between Hall and DHRC on the one hand, and third party dealers on the other. See, e.g., FAC, ¶¶ 134-38 and 150-56. Because the Sherman Act claims asserted in the FAC are exclusively premised on such contracts, there is no separate requirement that the FAC set forth further allegations of a conspiracy.

Notwithstanding the above, Plaintiffs' allegations regarding the secret allocation and exclusive dealing agreements nonetheless constitute a valid conspiracy. Defendants argue that Hall and DHRC are incapable of forming a conspiracy with one another since Hall is an officer of DHRC and is therefore not legally distinct from DHRC. See Motion, p. 9. Plaintiffs do not disagree; a corporation's officers, directors, and employees cannot conspire with the corporation. Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769, 104 S. Ct. 2731, 2740, 81 L. Ed. 2d 628, 642 (1984). However, the FAC does not allege that Hall and DHRC are co-conspirators, or even co-parties to the agreements. The FAC fully concedes that Hall and DHRC are a "single entity" for purposes of an antitrust claim. Rather, the agreements and conspiracy to control and monopolize the market for real-time trading in numismatic materials is between: (1) Hall/DHRC as a single conspirator; and (2) *other third party dealers* in numismatic materials whose economic interests are entirely independent from Hall's/DHRC's. See FAC, ¶¶ 134-36 and 150.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

Accordingly, the FAC properly alleges a conspiracy because Hall/DHRC and such third party dealers have specific divergent economic interests unique to their respective operations and are, therefore, legally distinct from one another. See FAC, ¶ 135.

**E. The FAC Adequately States a Claim under Sherman Act § 2**

With respect to the FAC's claim under Section 2 of the Sherman Act, Defendants, once again, argue that Plaintiffs failed to allege the requisite facts when the FAC is replete with these very allegations.

**1. Monopoly Power**

First, Defendants state that Plaintiffs have not properly pled the element of "monopoly power" because the FAC's allegation that Hall and DHRC have monopoly power over the CCE website is "absurd." Motion, p. 10. What is absurd is that Defendants do not offer even the slightest factual or legal support for this bold position. Moreover, in apparent indifference to the rest of the FAC, the Motion entirely fails to address the FAC's additional allegations regarding the monopoly that Hall and DHRC maintain over the market of online, real-time trading in numismatic materials. For example, the FAC specifically describes the monopoly created by virtue of the exclusive dealing agreement between Hall/DHRC and third party dealers whereby Hall/DHRC have decreased competition by excluding their main competitors from the benefit of deals posted on the CCE website. E.g., FAC, ¶ 151.

Likewise, the FAC describes the monopoly created by virtue of Hall's position within CU and CCE whereby he, along with Defendants East and Brandow, have unmitigated control and discretion over CCE membership and trading rules, the effect of which has substantially expanded Hall's/DHRC's customer base on the CCE platform by eliminating their largest competitor, WRCG, from the network. FAC, ¶¶ 113 and 157-58. As to each monopoly, the FAC describes Hall's/DHRC's specific intent to engage in predatory,

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

anticompetitive conduct and destroy competition by entering into secret agreements with other dealers, eliminating their direct and biggest competitors such as WRCG by excluding them from CCE, and controlling prices of numismatic materials sold on the CCE website by virtue of Hall's control over PCGS. See FAC, ¶¶ 199-204. The Motion is silent as to each of these allegations.

**2. Essential Facility**

Defendants also argue that the FAC fails to establish that the CCE trading platform is an "essential facility." See Motion, pp. 10-12. As discussed below, the FAC undeniably demonstrates that the CCE trading platform is an essential facility to the market of real-time trading in numismatic materials. See FAC, ¶¶ 159-61.

The essential facility doctrine imposes liability when one firm, which controls an essential facility, denies a second firm reasonable access to a product or service that the second firm must obtain in order to compete with the first. Alaska Airlines, Inc. v. United Airlines, Inc., 948 F.2d 536, 542 (9th Cir. 1991). A facility is "essential" if it cannot be feasibly duplicated, such that a firm's refusal to grant access to it does not merely impose a handicap on competition by impeding a competitor's ability to compete with the firm, but entirely *eliminates* competition. Id. at 543.

Defendants rely on two non-controlling opinions of other circuits discussed in Alaska Airlines in a feeble attempt to establish that the CCE trading platform is not "essential" to the ability to compete in the market of real-time trading of numismatic materials.[10] See Motion, pp. 10-12. In Olympia, Western Union's

[10] The Motion omits any discussion of Alaska Airlines's reliance on MCI, which is factually analogous to the instant matter . See Alaska Airlines, 948 F.2d at 543 and MCI Comm. Corp. v. American Telephone & Telegraph Co., 708 F.2d 1081 (7th Cir. 1983). In MCI, the Court expressly held that the refusal to grant access to a network that could not be feasibly duplicated effectively eliminated competition in the downstream market and constituted a monopoly thereover. Id. at 1132-33.

sales force decided to stop selling and leasing telex machines made by its competitors and exclusively sell/lease its own machines. Olympia Equipment Leasing Co. v. Western Union Telegraph Co., 797 F.2d 370 (7th Cir. 1986). One of Western Union's competitors, Olympia Equipment, had no sales force of its own and relied on referrals from Western Union's salesmen. Id. at 373. The Seventh Circuit found that access to Western Union's sales force was not essential for Olympia Equipment to compete in the telex machine supply market because even though Western Union's sizable sales force provided a considerable advantage and would require great effort to duplicate, Olympia Equipment remained free to compete by pursuing its own subscribers as opposed to those referred by Western Union. Id. at 378-79.

Olympia does not apply here because, as alleged in the FAC, the CCE trading platform is a unique platform that has not, and cannot, be replicated. See FAC, ¶ 244. The ability to trade numismatic materials in real-time is an invaluable service offered *exclusively* by CCE on its website, access to which is inherently necessary to compete in the "*real-time* trading of numismatic materials" market. FAC, ¶¶ 85 and 244. Online trading in real-time offers a significant advantage over in-person trading since it allows traders to capitalize on the perpetual fluctuations in the price of precious metals. FAC, ¶ 85. Whereas Olympia Equipment was still a viable competitor to Western Union despite Western Union's refusal to grant access to its sales force, Plaintiffs have been completely shut out of the real-time trading in numismatic materials market as a result of Defendants' refusal to grant Plaintiffs access to the CCE platform.

Defendants also rely on Twin Labs, a Second Circuit opinion discussed in Alaska Airlines, wherein the Second Circuit found that a nutritional supplement supplier's refusal to include its competitor's advertisements in its magazines did not impose a "severe handicap" on the ability to compete in the nutritional supplements market since the power to exclude advertising from its magazines did

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

not amount to the power to *eliminate* competition therein. See Twin Labs, Inc. v. Weider Health & Fitness, 900 F.2d 566, 569-70 (2nd Cir. 1990). As noted by the Court, even though the defendant's magazines dominated the bodybuilding magazine market by accounting for 66% of all bodybuilding magazine sales, the facility in question (i.e., the defendant's magazines) was not "the only one in town." Id. at 569.

Again, Defendants' authority is inapplicable here because the CCE platform is truly the "only facility in town" in the real-time market for numismatic materials in the United States. By exploiting his ownership of CCE and denying Plaintiffs access to the CCE website, Hall effectively eliminates his largest competitors from competing in a market where access to the CCE website is not merely advantageous, but undeniably *necessary* for participation therein. See FAC, ¶ 161. To state that "Plaintiffs make no allegations that . . . any defendant had any ability to eliminate competition in any market" (Motion, p. 12) is laughable; the FAC alleges time and again multiple facts demonstrating the reach of Hall's and DHRC's power over and monopoly within the market of real-time trading in numismatic materials.[11]

As set forth above, the FAC contains clear allegations and supporting facts identifying the relevant market and establishing Hall's/DHRC's power over such market. Moreover, the FAC offers countless examples of the antitrust injury caused by Hall's/DHRC's actions and sufficiently pleads the requisite elements for the respective Sherman Act claims. Accordingly, the Court should deny

---

[11] Defendants note that the FAC does not make any claims that "CCE has a monopoly in the upstream market of on-line [*sic*] dealer to dealer [*sic*] trading platforms." Motion, p. 12. It is unclear why Defendants raise this point, as the relevant market has nothing to do with the purported market for online dealer-to-dealer trading platforms. The relevant market is the market for real-time trading of numismatic materials, access to which is offered through the CCE website. Indeed, the FAC makes no claim that *CCE* has a monopoly over any market—the parties who hold the monopoly over the relevant market are *Hall and DHRC*. The CCE website is simply the source from which Hall's and DHRC's monopoly power arises.

Defendants' Motion to dismiss the Sherman Act claims since the FAC adequately alleges an antitrust claim.

### III. THE FAC STATES A CLAIM UNDER THE CLAYTON ACT

Defendants argue that the FAC fails to state a claim under 15 U.S.C. § 14 (the "Clayton Act") because the FAC does not allege sufficient facts regarding the exclusive dealing agreement between Hall/DHRC and third party dealers. See Motion, p. 12. Defendants further argue that the FAC fails to allege: (1) a valid "tying agreement"; and (2) that the subject products constitute "goods, wares, merchandise, machinery, supplies or other commodities" under 15 U.S.C. § 14. See Motion, ¶ 13. Not only do Defendants rely, once again, on inapplicable authority, but even a cursory review of the FAC reveals that Plaintiffs have sufficiently alleged the requisite facts to state a claim under the Clayton Act.

The Clayton Act prohibits two types of agreements: exclusive dealing agreements and tying arrangements. See 15 U.S.C. § 14 and Cyntegra, Inc. v. Idexx Laboratories, Inc., 520 F.Supp.2d 1199, 1205-06 (C.D. Cal. 2007). Accordingly, Plaintiffs' purported failure to allege facts establishing an improper tying arrangement is inconsequential, as Plaintiffs' Clayton Act claims are premised on an exclusive dealing agreement only.

With respect to the exclusive dealing agreement between Hall/DHRC and third party dealers, the FAC clearly alleges that the agreement applies to the "sale of tangible rare coins and other numismatic materials in the United States." FAC, ¶ 150. In an apparent refusal to accept coins and other numismatic materials as *tangible, movable articles of commerce*, Defendants boldly assert that the FAC fails to establish that the products in question constitute "goods, wares, merchandise, machinery, supplies or other commodities" as required under the Clayton Act. See Motion, p. 13. Notwithstanding the sheer absurdity of this position, Defendants cannot even cite a single case wherein "goods, . . .

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

merchandise, . . . or other commodities" are defined, let alone defined to exclude tangible, movable articles of commerce. See Motion, p. 13.

Instead, Defendants erroneously cite to a case that is not only inapplicable to the facts of the instant matter, but is *not even permissible to cite to this Court*. See Motion, p. 13 (citing to an unpublished opinion issued in 1996).[12] Defendants rely on JM Computer wherein the Court found that the plaintiff's allegations of a tying agreement and the subject products in the context of a *Sherman Act violation* were insufficiently described and, therefore, constituted mere legal conclusions. Motion, p. 13 and JM Computer Services, Inc. v. Schlumberger Tech., Inc., 1996 U.S. Dist. LEXIS 21885 (N.D. Cal. 1996). Notwithstanding that JM Computer was decided in the context of a claim brought under the *Sherman Act*, JM Computer nonetheless still would not apply since the relevant antitrust violations in the instant matter are premised on an exclusive dealing agreement, not a tying arrangement. See JM Computer, 1996 U.S. Dist. LEXIS 21885, pp. 8-10.

Furthermore, unlike the complaint in JM Computer, the FAC fully identifies and describes with specificity the subject products of the illegal agreement, i.e., tangible rare coins and other numismatic materials in the United States. FAC, ¶ 150. While Defendants arbitrarily assert that the FAC "suffers from the same infirmities" as the complaint in JM Computer, even a cursory review of the FAC indicates the opposite. Motion, p. 13. As discussed above, the FAC gives specific facts regarding the exclusive dealing agreement between Hall/DHRC and third party dealers, including but not limited to: (1) the specific manner in which Hall/DHRC unreasonably restrain trade and control the market of real-time trading of numismatic materials; and (2) the precise harms caused by their exclusive dealing agreement with third party dealers. See FAC, ¶¶ 17, 102-03, 150-56, 167-85, 212-13, 215, 218, and 241.

[12] As set forth herein at footnote 4, unpublished dispositions and orders issued before January 1, 2007 may not be cited to this Court. U.S. Ct. App. 9th Cir., Circuit Rule 36-3(c).

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

In a final desperate attempt to persuade the Court that the FAC does not sufficiently allege a claim under the Clayton Act, Defendants rely on Malaney, another unpublished case, for the proposition that a claim brought under the Clayton Act must plead a viable relevant market in which the defendant has market power. See Motion, p. 13 and Malaney v. UAL Corp., 434 Fed. Appx. 620 (9th Cir. 2011). Again, Defendants' reliance is misplaced. Apart from the fact that Malaney is not controlling, it is expressly limited to Clayton Act violations regarding mergers and the acquisition of stock by one corporation of another. Id. at 622.

Notwithstanding, the FAC adequately identifies and pleads a viable relevant market in which Hall (and DHRC) have market power. See Section II (A)-(B) herein. Accordingly, Defendants have not provided any plausible grounds to warrant dismissal of the FAC's Clayton Act claim and, therefore, the Court should deny Defendants' Motion as to the same.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

## IV. THE FAC STATES A CLAIM UNDER THE LANHAM ACT

Defendants argue that the FAC does not plead sufficient facts to state a claim for false advertising under 15 U.S.C. §§ 1051, et seq. (the "Lanham Act") because the FAC does not meet the higher pleading standards set forth in F.R.C.P. Rule 9(b). See Motion, p. 15. Defendants argue that to satisfy F.R.C.P. Rule 9(b), a complaint must plead with particularity the "who, what, when, where, and how" of the misconduct at issue. Motion, p. 15. Defendants' argument is not only lacking in factual support, but rests upon entirely *non-existent rules of law.*[13]

[13] It is worth noting that the Ninth Circuit does *not* require Lanham Act claims be subject to the heightened pleading requirements set forth in F.R.C.P. Rule 9(b). While districts courts across the various circuits are divided on the issue of whether F.R.C.P. Rule 9(b) applies to false advertising claims, this Court expressly noted as of July 2012 that none of the circuits, including the Ninth Circuit, have addressed this issue. See Western Sugar Cooperative v. Archer-Daniels-Midland Co., 2012 U.S. Dist. LEXIS 109927, p. 9 (C.D. Cal. July 31, 2012). Accordingly, this Court is free to determine, *sua sponte*, whether false advertising claims brought under the Lanham Act must be pled with particularity.

Defendants rely on Vess, which requires under F.R.C.P. Rule 9(b) that averments of fraud be accompanied by the "who, what, when, where, and how" of the misconduct charged. See Motion, p. 15; see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Defendants neglect to mention, however, that *Vess did not involve claims under the Lanham Act*. The claims in Vess were grounded in fraud which, naturally, subjected them to the fraud exception for pleading requirements set forth in F.R.C.P. Rule 9(b). Id. at 1101-02. However, as to claims actually brought under the Lanham Act, courts have expressly held that a false advertising claim under the Lanham Act is not the same as a claim for fraud and, accordingly, falls outside the ambit of F.R.C.P. Rule 9(b) and may not be the subject of any heightened pleading requirement. See, e.g., John P. Villano Inc. d/b/a JP Productions v. CBS, Inc. d/b/a WCBS-FM, 176 F.R.D. 130, p. 3 (S.D. NY 1997).

Even if the FAC's Lanham Act claims were subject to F.R.C.P. Rule 9(b), the FAC nonetheless meets this standard. As set forth in the FAC, Plaintiffs allege four false advertisements made by Defendants, each of which is supported by numerous allegations of fact throughout the FAC. See, e.g., FAC, ¶¶ 219-32.

Moreover, Plaintiffs have standing to assert a Lanham Act claim, which requires a competitor to establish only that he is likely to be injured by the defendant. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 826 (9th Cir. 2011). Because a likely injury is far less certain than an actual injury, plaintiffs need not prove actual injury to establish Lanham Act standing. Id. Defendants argue that Plaintiffs lack standing to bring a Lanham Act claim because the FAC does not allege that Plaintiffs compete with PCGS by providing coin-grading services, or that Plaintiffs compete with CCE by providing an online trading platform. See Motion, p. 15. Again, Defendants raise irrelevant points—the FAC does *not* allege a Lanham Act claim against PCGS or CCE, but only against Hall, who has specific control over both entities.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

The FAC repeatedly alleges that Plaintiffs are competitors of *Hall*, a fellow real-time dealer of numismatic materials. See, e.g., FAC, ¶¶ 7, 17, 47, 75, 103, 161, 167, and 201. Hall's false advertisements are not only likely to injure Plaintiffs but in fact *have* injured Plaintiffs because they caused Plaintiffs to buy and sell "coins at incorrect prices with Third Party Dealers who Plaintiffs incorrectly believed had met the CCE membership requirements and were not involved in a monopoly agreement." See FAC, ¶ 231. Such false advertisements have further injured Plaintiffs because Plaintiffs have been excluded from sales that were improperly diverted to Hall as a result of the secret allocation and exclusive dealing agreements with third party dealers. Hall's false advertisements have also injured Plaintiffs by denying them access to the CCE trading platform despite satisfying all applicable membership criteria. See, e.g., FAC, ¶¶ 137 and 154. Even while Plaintiffs were still members of CCE, they were harmed by Hall's false advertisements since they, like other CCE members, were required to submit their coins for grading to PCGS, founded and operated by Hall himself, for supposedly "impartial and accurate" grading. See, e.g., FAC, ¶¶ 221 and 246-47.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

Based on the foregoing, Plaintiffs have properly pled a Lanham Act violation and Defendants have not articulated any valid grounds to dismiss the same. Accordingly, Defendants' Motion to dismiss this claim should be denied.

## V. THE FAC STATES A CLAIM UNDER CAL. B&P CODE § 16720

Defendants disingenuously argue that the FAC does not state a claim under California Bus. & Prof. Code § 16720 because the FAC "never really or sufficiently explained the conduct that allegedly constitutes 'price fixing' or 'exclusive dealing'." See Motion, p. 15. In support of this argument, Defendants simply recite authority but offer no analysis as to why such allegations are purportedly deficient. Indeed, Defendants cannot offer any legitimate argument because the FAC clearly describes the circumstances and conduct by which Defendants have restrained trade.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

### A. Price Fixing

For example, the FAC specifically describes how CCE's price list constitutes price fixing. FAC, ¶¶ 139-49. As discussed above, Defendants Hall, East and Brandow require CCE customers to utilize PCGS (founded and run by Hall himself) as the primary coin grading service thereby controlling valuation of all numismatic materials sold and traded on CCE. FAC, ¶¶ 176-77 and 246-47. Hall, East and Brandow then arbitrarily select which information from the price list to disclose to rare coin consumers and dealers in the United States. FAC, ¶ 141. Access to the price list on the CCE website critically affects the sale of rare coins and other numismatic materials. FAC, ¶ 142.

The FAC explains how such actions have unreasonably restrained trade and caused "antitrust injury," namely, CCE consumers are forced to buy coins at prices specifically driven by the business interests of Hall, DHRC and third party dealers rather than by the honest operation of the market. See FAC, ¶¶ 170-73.

### B. Exclusive Dealing

Similarly, the FAC describes in detail how the exclusive dealing agreement between Hall/DHRC and third party dealers constitutes an unreasonable restraint of trade and injures competition.[14] Specifically, Plaintiffs and other CCE customers who are not members of the exclusive dealing agreement between Hall/DHRC and third party dealers are denied free and open access to the complete real-time network of U.S. rare coin dealers (FAC, ¶¶ 167-69) and additionally, are wholly excluded from the benefit of deals posted on the CCE website by Hall, DHRC and/or third party dealers (FAC, ¶ 151).

---

[14] Defendants state that Plaintiffs fail to appreciate the substantive difference between the act of refusing to deal and the execution of a contract which prevents a person from dealing with another. Motion, p. 15, n. 4. Defendants' assertion is nonsensical, as Plaintiffs do not allege that their injury, or injury to competition as a whole, arises from Hall's/DHRC's mere refusal to deal with Plaintiffs. Rather, the FAC expressly alleges the existence and "execution of a contract which prevents [Hall, DHRC, and third party dealers] from dealing with [dealers who are not parties to such contract]." See, e.g., FAC, ¶¶ 150-54.

Moreover, in exercising unlimited control over CCE membership admissions, Defendants Hall, East and Brandow have further restrained trade by limiting the scope of viable competitors in the market of real-time trading in numismatic materials and altogether eliminating select competitors' (such as Plaintiffs) ability to compete in such market.[15] See FAC, ¶ 234.

Accordingly, the Court should deny Defendants' Motion since, as demonstrated above, the FAC sets forth sufficient allegations and facts to state a claim for unreasonable restraint of trade under Cal. Bus. & Prof. Code § 16720.

## VI. THE FAC STATES A CLAIM UNDER B&P CODE §§17200, ET SEQ.

Defendants contend that Plaintiffs lack standing to bring an unfair competition claim and have failed to identify unfair or unlawful business practices against Hall and DHRC. See Motion, pp. 17-19. Once again, Defendants' argument is misplaced, as it rests on the erroneous assumption that the sole injury in question arises from Plaintiffs' inability to access the CCE network.

Defendants mischaracterize the nature of this action and incorrectly state that it is essentially a "backdoor complaint[ ] regarding CCE's exercise of its contractual right to terminate Plaintiffs' license." Motion, p. 18. Plaintiffs, however, make no such complaint, *as the FAC does not seek damages related to the termination of Plaintiffs' CCE membership.*

As stated in the opening paragraph of the FAC, this action arises out of Defendants' attempts to preclude competition and to control prices in the market for real-time trading in numismatic materials. FAC, ¶ 1. This is an antitrust action and accordingly, seeks damages for injuries caused by Defendants' anticompetitive conduct, including but not limited to those injuries arising from: (1) the secret allocation agreement between Hall/DHRC and third party dealers,

[15] Once again, Defendants refer to these allegations as "absurd" yet, again, fail to discuss why such allegations are "absurd" or otherwise inadequate to state a claim for unreasonable restraint of trade. See Motion, p. 16.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

which infringes on CCE customers' reasonable expectation to choose independently with whom they would like to deal (FAC, ¶¶ 137, 163, and 241); (2) the exclusive dealing agreement between Hall/DHRC and third party dealers whereby Hall's/DHRC's competitors who are not parties to such agreement are wholly excluded from the benefit of select deals posted on the CCE website (FAC, ¶ 151); and (3) a price fixing scheme whereby Defendants specifically control the price of rare coins sold and traded on the CCE website as discussed above (FAC, ¶¶ 176-77, 242, and 246-47).

Plaintiffs' unfair competition claim is exclusively premised on the above business practices, each of which is independently unlawful (and unfair) under various statutes and regulations for the reasons and upon the authority set forth herein. Additionally, Plaintiffs have standing to bring this claim because they, like other CCE consumers who are not parties to the secret allocation and exclusive dealing agreements between Hall/DHRC and third party dealers, have actually lost money by paying higher prices for numismatic materials purchased on CCE than they would otherwise have to pay if numismatic materials were valued by grading services other than PCGS. E.g., FAC, ¶ 242.

Moreover, Plaintiffs' unfair competition claim is properly asserted against Hall and DHRC, not CCE, because as discussed herein, it is the specific anticompetitive conduct of Hall and DHRC that have caused harm to competition. Accordingly, the Court should deny Defendants' Motion to dismiss Plaintiffs' claim under Cal. Bus. & Prof. Code §§ 17200, et seq.

## VII. THE FAC STATES A CLAIM FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

Defendants, true to form, misread the FAC and erroneously focus on a single aspect of Plaintiffs' interference claims; to wit, the posting of derogatory statements. The facts pled at paragraphs 259-73 and 275-88 of the FAC are unique to the interference claims, and were therefore alleged in the context of

Plaintiffs' seventh and eighth causes of action for intentional and negligent interference, respectively. Defendants fail to appreciate that as to each of these causes of action, Plaintiffs re-alleged and incorporated by reference the preceding paragraphs, which *included* the factual allegations common to all claims set forth in paragraphs 77-186 of the FAC. See FAC, ¶¶ 258, 272-74, 280, and 287-88. The interference caused by Defendants is therefore not limited to the posted false statements, but also includes all of the same conduct that constitutes violations of the Sherman, Clayton and Lanham Acts. Sufficient facts have been pled to demonstrate that violations of these Acts have resulted in interference, which in turn resulted in economic harm to Plaintiffs.

Even assuming the interference claims were limited to Defendants' failure to remove derogatory comments about Plaintiffs, the claims are adequately pled. Defendants erroneously rely on Zeran, which authority is readily distinguishable. See Motion, p. 20; see also Zeran v. America Online, Inc., 129 F.3d 327 (4th Cir. 1997) and 47 U.S.C. § 230. Unlike the social media protected there, the instant case is about an "information content provider," namely, an online marketplace with a price list and real-time trading subject to stricter scrutiny because of antitrust laws. See Carafano a/k/a Chase Masterson v. MetroSplash.com, Inc., 339 F.3d 1119 (9th Cir. 2003). McCready[16] is also easily distinguishable because Plaintiffs here are not debtors, which was the focal point of McCready trying to do business on eBay. See McCready v. eBay, 217 Ill. 2d 566, 844 N.E.2d 39 (2005).

Defendants argue that Plaintiffs have not pled *any* of the elements as required by Della Pena. See Motion, p. 21 and Della Pena v. Toyota Motor Sales USA, Inc., 11 Cal.4th 376, 902 P.2d 740, 45 Cal. Rptr. 2d 436 (1995). Once again, Defendants have failed to read the specific factual allegations of the FAC,

[16] Defendants again impermissibly cite to an unpublished, pre-2007 opinion. Motion, p. 21.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

wherein all of the requisite elements for the subject interference claims are adequately pled. See, e.g., FAC, ¶¶ 259-73 and 275-88.

## VIII. THE FAC STATES A CLAIM FOR BREACH OF CONTRACT

Defendants incorrectly assert that Plaintiffs failed to allege their performance under the subject contract, the Settlement Agreement. Defendants are wrong. Defendants attached the Settlement Agreement as Exhibit A to the FAC, which rendered all of the terms of the Settlement Agreement so alleged. See FAC, ¶ 291. The Settlement Agreement states, in pertinent part, that "PLAINTIFFS will dismiss the APPEAL with prejudice . . .; and PLAINTIFFS will pay the sum of $12,000 in attorney fees." FAC, Exh. A, p. 2. Plaintiffs also alleged in the FAC that the attorney fees were paid. FAC, ¶¶ 292-93. These allegations adequately plead the element of Plaintiffs' performance.

Moreover, Defendants improperly suggest that the state court resolved the breach of contract action. The FAC unambiguously asserts that the breach of contract action has not been litigated, "because the state court did not issue a final judgment as to this issue." FAC, ¶ 296. Critically, and contrary to Defendants' misleading assertions, the state court *never* decided (or even considered) whether Defendants breached the Settlement Agreement. The transcript of the hearing, attached as Exhibit B to Defendants' supporting declaration, clearly reflects that the state court never had the Settlement Agreement before it. See Muriella Decl., ¶ 4, Exh. B (Dkt. 29-2 at pp. 44-56) ("And there's still this big problem . . . for both of you that neither of you have submitted this settlement agreement that you say controls . . . Nobody wanted to put that in there." Id. at p. 51:6-8, 12).

In short, *the state court never decided whether the Settlement Agreement was breached*, because there was no evidence of the Settlement Agreement before it as there now is in this case. Neither of the parties put the Settlement Agreement in evidence before the state court, so the court effectively had no ability to determine whether the agreement was breached or not. Notwithstanding the

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

foregoing, Defendants incredibly attempt to mislead this Court into believing that the issue was already decided.

## IX. THE FAC IS PROPER AS AGAINST INDIVIDUAL DEFENDANTS

Defendants weakly suggest that there is no basis of liability as against the individually named Defendants (Hall, East and Brandow). Defendants' reliance on Shoemaker, Haidinger-Hayes, Inc. and Reynolds is misplaced because the FAC clearly alleges that these individuals are sued for acts performed in their "independent and individual capacity." See Motion, p. 23 and FAC, ¶ 36. The interference claims (seventh and eighth causes of action) are asserted against Hall, East and Brandow for conduct that fell *outside* the scope of their respective agency relationships with the corporate defendants. FAC, ¶¶ 261 and 277. The contract claim names the individuals insofar as they were parties to the Settlement Agreement. FAC, ¶ 293. The FAC alleges that the individual Defendants acted independently in other respects. FAC, ¶¶ 47, 54-55, 115, 119, and 125. To the extent the conduct in question violate those individuals' duties as corporate officers, said conduct falls outside the scope of their agencies.

Additionally, and notwithstanding Defendants' fondness for hyperbole ("kitchen sink approach," "bad faith," "blowing hot and cold," and "scorched Earth approach," Motion, p. 23), Defendants conveniently forget that individual defendants can be *both* named in a representative *and* an individual capacity. Moreover, whenever a corporation violates penal provisions of the antitrust laws (Sherman Act, §§ 1-2), such violations are deemed those of its individual agents who authorized, ordered or committed any of the illegal acts. 15 U.S.C. § 24. Accordingly, Plaintiffs allege that Hall, who "owns DHRC," *and* DHRC violated the Sherman Act, §§ 1-2. FAC, ¶¶ 41 and 187-210. Defendants' reference to the allegations of Plaintiffs' state court complaint is meaningless since there, the case involved the termination of a license agreement; the instant case involves an antitrust injury.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

## X. CONCLUSION

For the reasons and upon the authority set forth above, Plaintiffs have satisfied their pleading burden for each of their separate causes of action. Accordingly, Plaintiffs William Dominick and Westwood Rare Coin Gallery, Inc. respectfully request that this Court deny Defendants' Motion in its entirety.

However, in the event the Court is inclined to grant Defendants' Motion, Plaintiffs respectfully request leave to amend since the FAC raises antitrust claims that were never presented to the state court, claims which (since they are federal in nature) are more properly asserted in this Court.

DATED: September 4, 2012

**EDGERTON & WEAVER, LLP**
THEODORE C. PETERS
ELIZABETH M. DEL CID
K. ADAM BLOOM
SABRYNE COLEMAN

By: */s/Theodore C. Peters*
Theodore C. Peters, Esq.
Attorneys for Plaintiffs,
William Dominick and Westwood Rare Coin Gallery, Inc.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles. I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 2615 Pacific Coast Highway, Suite 300, Hermosa Beach, California 90254.

On September 4, 2012, I served the following document described as:

**PLAINTIFFS WILLIAM DOMINICK AND WESTWOOD RARE COIN GALLERY, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

on the interested parties in this action by placing the true copies thereof enclosed in sealed envelopes as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

( ) **By U.S. Mail:** I deposited such envelopes in the mail at Hermosa Beach, California. The envelopes were mailed with postage thereon fully prepaid.

( ) **By Facsimile Machine:** I caused the above-referenced document(s) to be transmitted to the below-named person(s).

(X) **By Electronic Mail:** I caused the above-referenced document(s) to be transmitted to the below-named person(s).

(X) (STATE and FEDERAL) I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct.

EXECUTED on September 4, 2012, at Hermosa Beach, California.

*/s/ Carole Serrano*
Carole Serrano

## SERVICE LIST

William Dominick, et al. v. Collectors Universe, Inc., et al.
CDDC Case No. CV 12- 04782 ODW (CWx)

**DEFENDANTS' ATTORNEYS:**

Sam Muriella, Esq.
**ATTLESEY STORM, LLP**
2552 Walnut Avenue, Suite 100
Tustin, CA 92780
E-mail: sam@attleseystorm.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com