O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WILLIAM DOMINICK; and
WESTWOOD RARE COIN GALLERY,
INC.,

            Plaintiffs,

      v.

COLLECTORS UNIVERSE, INC.;
CERTIFIED ASSET EXCHANGE, INC.
a/k/a CERTIFIED COIN EXCHANGE;
DAVID HALL RARE COINS; DAVID
HALL; CASSI EAST; and MICHAEL
BRANDOW; and DOES 1 through 10,
inclusive,

            Defendants.

Case No. 2:12-cv-04782-ODW(CWx)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS [29]**

## I.   INTRODUCTION

Defendants Collectors Universe, Inc.; Certified Asset Exchange, Inc. a/k/a Certified Coin Exchange; David Hall Rare Coins; David Hall; Cassi East; and Michael Brandow collectively move to dismiss Plaintiffs William Dominick and Westwood Rare Coin Gallery, Inc.'s First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 27.)  Having carefully considered

the papers filed in support of and in opposition to this Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7–15.  The Court **GRANTS in PART** and **DENIES in PART** Defendants' Motion for the reasons explained below.

## II.   FACTUAL BACKGROUND

William Dominick is a full-time professional numismatist and rare-coin dealer who owns Westwood Rare Coin Gallery, Inc. ("WRCG").  WRCG is a New Jersey corporation in the business of selling rare coins, bullion, and other numismatic material[1] in California.  (FAC ¶¶ 23, 25, 32.)  Both Dominick and WRCG are Plaintiffs in this case.

David Hall is also a full-time professional numismatist and rare-coin dealer.  (*Id.* ¶ 39.)  Hall wears many hats:  he owns David Hall Rare Coins ("DHRC"), a California corporation that deals in rare coins and bullion; he acts as the president, director, and chief executive officer of Collectors Universe, Inc., a Delaware corporation engaged in business in the coin industry; he serves as the director of Certified Coin Exchange ("CCE"), a Delaware corporation that operates the main website for real-time trading of numismatic materials; and he is a founding member and the chief executive officer of Professional Coin Grading Service ("PCGS"), the service that grades most of the rare coins traded on the CCE website.  (*Id.* ¶¶ 41, 43, 44, 45, 46, 48, 51–52.)  Hall, DHRC, Collectors Universe, and CCE are all named Defendants.

Cassi East and Michael Brandow are additional Defendants in this action.  East is CCE's president, while Brandow is CCE's sales director.  (*Id.* ¶¶ 54–55.)  Hall, East, and Brandow jointly manage CCE.  (*Id.* ¶ 104.)

Defendants allegedly engaged in numerous acts to establish their control over the relevant market of real-time trading in numismatic materials and eliminate their

---

[1] Numismatic material includes bullion, rare coins, certified coins, bags, state quarters, eagles, foreign coins, and ancient currency.

competition, including Plaintiffs.  (*Id.* 101–03.)  Specifically, Plaintiffs take issue with Defendants' secret allocation agreement, exclusive-dealing agreement, and certain instances of price fixing.  (*Id.* ¶ 102.)

According to Plaintiffs, Hall and DHRC entered into a secret allocation agreement with third-party dealers who utilize the CCE website.  (*Id.* ¶ 134.)  This agreement "secretly divide[d] and distribute[d]" CCE website customers among the participants, thus preventing Plaintiffs from gaining customers in the market.  (*Id.* ¶ 137–38.)

Hall and DHRC also allegedly entered into an exclusive-dealing agreement with third-party dealers that afforded Defendants the benefit of a monopoly in the market for rare coins and other numismatic materials.  (*Id.* ¶¶ 150–51.)  This agreement prevented Plaintiffs from accessing deals on the CCE website, and even made them the victim of "sham offers" made by Defendants Hall or DHRC, or both. (*Id.* ¶¶ 151–54.)  Plaintiffs describe one such sham offer: "Dominick and/or WRCG accepted Hall's and/or DHRC's offer to sell eleven gold commemorative coins on the CCE website, but Hall and/or DHRC only delivered one of the eleven coins . . . because Plaintiffs are not a part of the Exclusive Dealing Agreement [Hall and DHRC] has with other dealers."  (*Id.* ¶¶ 153–54.)

Plaintiffs further contend Defendants prepared the CCE price list in a manner that constituted illegal price fixing.  (*Id.* ¶ 139.)  Hall, East, and Brandow were responsible for creating the CCE price list, and they selectively decided which prices to disclose and failed to be transparent with how the price list was initially compiled. (*Id.* ¶¶ 140, 148–49, 181.)  This created problems because the CCE price list was supposed to accurately provide CCE members and other price-reporting services with "the latest spot metal and bullion coin prices."  (*Id.* ¶¶ 142–43, 146–47.)

In addition, Hall engaged in false advertising on the CCE website.  Specifically, Hall made the following false statements:  (1) PCGS-graded rare coins are "valued accurately and impartially"; (2) rare-coin dealers can become CCE members as long

as they fulfill CCE's requirements; (3) CCE membership will allow rare-coin dealers to participate "in lawful trades on the CCE website"; and (4) purchasers who utilize the CCE website to engage in trades only deal with rare-coin dealers "who [meet] and maintain the CCE membership requirements."  (*Id.* ¶¶ 221–24.)  According to Plaintiffs, none of these statements are true.  (*Id.* ¶ 225.)

Continuing on with the list of terribles, Defendants allegedly interfered with the contractual relationship between Plaintiffs and their customers.  (*Id.* ¶¶ 259–61.)  Even though Defendants knew about these relationships, Defendants entered into an agreement with third-party dealers to post false statements about Plaintiffs on the CCE website.  (*Id.* ¶ 260–61.)  Defendants failed to remove these statements, which caused Plaintiffs to lose customers and suffer financial losses.  (*Id.* ¶¶ 262–63, 265.)  In addition, Plaintiffs contend Defendants owed Plaintiffs a duty to grant an arbitration hearing regarding these false statements, but Defendants denied Plaintiffs' request.  (*Id.* ¶¶ 132, 286.)

Lastly, Defendants allegedly breached their settlement agreement with Plaintiffs.  (*Id.* ¶ 290.)  The settlement agreement, which stemmed from a state-court action Plaintiffs filed against Defendants, stated that Defendants could not seek recovery of attorney's fees once they were paid.  (*Id.* ¶¶ 290, 293, Ex. A.)  Even though these fees were settled, Defendants subsequently breached the agreement by filing a motion for said fees.  (*Id.* ¶¶ 290, 293.)

On August 9, 2012, Plaintiffs filed their First Amended Complaint.  (ECF No. 27.)  Plaintiffs' FAC asserts nine causes of action:  (1) violation of Section 1 of the Sherman Act against Hall and DHRC; (2) violation of Section 2 of the Sherman Act against Hall and DHRC; (3) violation of Section 3 of the Clayton Act against Hall; (4) violation of the Lanham Act against Hall; (5) unreasonable restraint of trade in violation of the California Cartwright Act, Cal. Bus. & Prof. Code § 16720, against Hall, DHRC, East, and Brandow; (6) unfair competition in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, against Hall and

1  DHRC; (7) intentional interference with prospective economic advantage against

2  Collectors Universe, CCE, Hall, DHRC, East, and Brandow; (8) negligent interference

3  with prospective economic advantage against Collectors Universe, CCE, Hall, DHRC,

4  East, and Brandow; and (9) breach of contract against Collectors Universe, CCE, Hall,

5  DHRC, East, and Brandow.  (FAC ¶¶ 187–298.)  Defendants filed this Motion to

6  Dismiss on August 23, 2012.  (ECF No. 29.)

7  ### III.   LEGAL STANDARD

8        Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal

9  theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

10 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint

11 need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short

12 and plain statement—to survive a motion to dismiss for failure to state a claim under

13 Rule 12(b)(6).  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P.

14 8(a)(2).  For a complaint to sufficiently state a claim, its "[f]actual allegations must be

15 enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v.

16 Twombly*, 550 U.S. 544, 555 (2007).  While specific facts are not necessary so long as

17 the complaint gives the defendant fair notice of the claim and the grounds upon which

18 the claim rests, a complaint must nevertheless "contain sufficient factual matter,

19 accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.

20 Iqbal*, 556 U.S. 662, 678 (2009).

21       *Iqbal*'s plausibility standard "asks for more than a sheer possibility that a

22 defendant has acted unlawfully," but does not go so far as to impose a "probability

23 requirement."  *Id.*  Rule 8 demands more than a complaint that is merely consistent

24 with a defendant's liability—labels and conclusions, or formulaic recitals of the

25 elements of a cause of action do not suffice.  *Id.*  Instead, the complaint must allege

26 sufficient underlying facts to provide fair notice and enable the defendant to defend

27 itself effectively.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).   The

28 determination whether a complaint satisfies the plausibility standard is a "context-

1  specific task that requires the reviewing court to draw on its judicial experience and
2  common sense." *Iqbal*, 566 U.S. at 679.

3      When considering a Rule 12(b)(6) motion, a court is generally limited to the
4  pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as
5  true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of L.A.*, 250 F.3d
6  668, 688 (9th Cir. 2001). Conclusory allegations, unwarranted deductions of fact, and
7  unreasonable inferences need not be blindly accepted as true by the court. *Sprewell v.*
8  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Yet, a complaint should be
9  dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts"
10 supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.
11 1999).

12     As a general rule, leave to amend a complaint that has been dismissed should be
13 freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when
14 "the court determines that the allegation of other facts consistent with the challenged
15 pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well*
16 *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d
17 1122, 1127 (9th Cir. 2000).

## IV.  DISCUSSION

18
19     Defendants move to dismiss Plaintiffs' FAC in its entirety. The Court first
20 considers Plaintiffs' federal claims, which include antitrust claims under the Sherman
21 Act and the Clayton Act, as well as a false-advertising claim under the Lanham Act.
22 The Court then analyzes Plaintiffs' claims for unfair competition and intentional and
23 negligent interference with prospective economic advantage, since these issues hinge
24 upon the viability of Plaintiffs' antitrust claims. Finally, the Court concludes by
25 weighing the sufficiency of Plaintiffs' breach-of-contract claim.

26 **A.  ANTITRUST CLAIMS**

27     Plaintiffs bring antitrust causes of action alleging (1) unreasonable restraint of
28 trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 ("Section 1"), and

the California Cartwright Act, Cal. Bus. & Prof. Code § 16720; (2) actual monopolization in violation of Section 2 of the Sherman Act ("Section 2"); and (3) exclusive dealing in violation of Section 3 of the Clayton Act, 15 U.S.C. § 14 ("Section 3").  The Court considers each in turn.

1.    *Violations of Section 1 of the Sherman Act and the Cartwright Act*

Plaintiffs assert that Hall and DHRC have violated both federal and state antitrust laws by virtue of a secret allocation agreement, an exclusive-dealing agreement, and price fixing.  Specifically, Plaintiffs allege Defendants violated Section 1 by entering into a secret allocation agreement with third-party dealers. (FAC ¶¶ 134, 137, 187–95.)  Plaintiffs contend this agreement unreasonably restrains trade by limiting Plaintiffs' access to customers in the market for real-time trading in numismatic materials.  (*Id.* ¶ 137.)  Likewise, Plaintiffs allege that Hall and DHRC, in addition to East and Brandow, have violated the Cartwright Act by entering into an exclusive-dealing agreement and preparing CCE's price list in a manner that constitutes price fixing.  (*Id.* ¶¶ 135–39, 235–36.)  Defendants argue that Plaintiffs' Section 1 and Cartwright Act claims cannot stand because Plaintiffs have not properly alleged a relevant market, a conspiracy to restrain trade, or an antitrust injury.  (Mot. 6–10, 15–16.)  The Court now addresses Defendants' defenses to Plaintiffs' Section 1 and Cartwright Act claims.

### a.  Legal standard under Section 1 and the Cartwright Act

Both Section 1 and the Cartwright Act prohibit agreements to restrain trade.  15 U.S.C. § 1; Cal. Bus. & Prof. Code §§ 16720, 16722.  Under Section 1 "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations" is prohibited.  15 U.S.C. § 1.  To sufficiently plead a Section 1 claim,

claimants must plead not just ultimate facts (such as conspiracy) but evidentiary facts which, if true, will prove:  (1) a contract, combination or conspiracy among two or more persons or distinct business entities;

(2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition.

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).  Similarly, the Cartwright Act proscribes combinations that "prevent competition in [the] sale or purchase of . . .  any commodity" or agreements "to keep the price of . . . [any] commodity . . . at a fixed or graduated figure."  Cal. Bus. & Prof. Code § 16720(c), (e)(2).   To successfully state a cause of action for restraint of trade under the Cartwright Act, a plaintiff must plead that a defendant (1) participated in the formation and operation of an agreement to restrain trade; (2) engaged in illegal acts to further said agreement; and (3) caused plaintiff damage as a result of those acts.  *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 722 (2001).

Collusive acts restraining trade can be illegal per se or illegal according to the rule of reason.  *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).  Acts that violate both Section 1 and the Cartwright Act are illegal per se when they are "so destructive of competition . . . and so devoid of redeeming value . . . that they are conclusively presumed to be unreasonable."  *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 986 (9th Cir. 2000).  For instance, price-fixing agreements are illegal per se because they eliminate competition by restricting the price and the output of a good.  *Id.*  This type of burden on competition is a classic example of what constitutes an antitrust violation, and in these cases plaintiffs do not need to indicate what the relevant market is or whether the defendants had market power.  *Id.*

This is not the case under a rule of reason analysis.  In applying the rule of reason, courts must first determine whether a plaintiff has properly defined a relevant market in which the defendant has market power.  *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1000–01 (9th Cir. 2008).

/ / /

Defendants argue that Plaintiffs have failed to define the relevant market in their FAC.   (Mot. 6–7.)   Even though Plaintiffs allege price fixing, there are insufficient facts demonstrating that a clear act of anticompetitive, per-se-illegal price fixing has occurred.   *See generally Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 103–04 (1984) ("Per se rules are invoked when surrounding circumstances make the likelihood of anticompetitive conduct so great as to render unjustified further examination of the challenged conduct."); *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 361–62 (1982) ("[I]t is . . . well settled that this characterization [of price fixing] is not to be applied as a talisman to every arrangement that involves a literal fixing of prices.").   Therefore, the Court applies the rule of reason analysis and evaluates Defendants' relevant market argument.

### b.  Relevant market

"The definition of an antitrust 'relevant market' is typically a factual rather than a legal inquiry, but certain legal principals govern the definition." *Apple Inc. v. Pystar Corp.*, 586 F. Supp. 2d 1190, 1196 (N.D. Cal. 2008) (citing *Newcal Indus., Inc.*, 513 F.3d at 1045).   To define the relevant market, a plaintiff must identify both a geographic market and a product market.   *Newcal Indus., Inc.*, 513 F.3d at 1045 n.4. A geographic market is "the area of effective competition . . . where buyers can turn for alternative sources of supply." *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) (internal quotations omitted).

The greater issue usually arises with defining a product market.   A product market comprises the "products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." *United States v. E.I. DuPont de Nemours & Co.*, 351 U.S. 377, 406 (1956); *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.").   Under these guidelines, "the relevant market must include 'the group or groups of sellers or

producers who have actual or potential ability to deprive each other of significant levels of business.'"  *Newcal Indus.*, 513 F.3d at 1045 (quoting *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989)).

A complaint should be dismissed under Rule 12(b)(6) only where "the complaint's 'relevant market' definition is facially unsustainable."  *Id.*  Such a "facially unsustainable" relevant market definition may be found in cases where "the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor."  *Colonial Med. Group, Inc. v. Catholic Healthcare W.*, No. 09-2192 MMC, 2010 WL 2108123, at *3 (N.D. Cal. May 25, 2010) (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997)).

Taking the allegations in Plaintiffs' FAC as true and resolving all factual inferences in Plaintiffs' favor, Plaintiffs sufficiently define the relevant market as "the market for real-time trading in numismatic materials."  (FAC ¶ 77.)  Plaintiffs clearly establish the United States as the geographic market.  (*Id.* ¶ 81.)  Furthermore, the product market is defined as being composed of a specific type of numismatic material:  "rare coins traded in real-time."  (*Id.* ¶ 79.)  Plaintiffs mention other types of numismatic material, "including bullion, . . . certified coins, bags, state quarters, eagles, foreign coins, and ancient currency" as being reasonably interchangeable for the purpose of collecting rare coins.  (*Id.* ¶ 97–98.)  Because the Court finds that Plaintiffs have adequately pled a geographic market and a relevant market broad enough to include both rare coins and their interchangeable substitutes, Plaintiffs' definition of the relevant market withstands scrutiny at the motion-to-dismiss stage.

### c.  Market power

The Court now looks at whether Plaintiffs have adequately pled Defendants' market power in the market for real-time trading in numismatic materials.  According

to Defendants, the allegation that Hall and DHRC have market power "because they impede the normal course of supply and demand in [the relevant] market [by] using their control over the CCE website" is insufficient.  (Mot. 8 (quoting FAC ¶ 101).) Plaintiffs claim that Defendants have market power not only because of their control of the CCE website—the "dominant online trading platform [for] rare coins and numismatic materials"—but also because of their participation in a secret allocation agreement, an exclusive-dealing agreement, and price fixing.  (FAC ¶¶ 51, 101–02, 134–56.)  These unreasonable restraints on trade purportedly allow Defendants to control the market by limiting Plaintiffs' access to customers, deals, and pricing information.  (*Id.* ¶¶ 137, 139–49, 151.)

Market power is defined as having the ability "to force a purchaser to do something that he would not do in a competitive market."  *Church & Dwight Co., Inc. v. Mayer Labs., Inc.*, No. C–10–4429 EMC, 2012 WL 1231801, at *13 (N.D. Cal. 2012).  A plaintiff can prove market power either directly or circumstantially.  *Id.* Under the direct-evidence test, a plaintiff must allege both restrictive output and supracompetitive prices.  *Id.*  Restrictive output exists only when a defendant can limit marketwide output by reducing its own output.  *Id.*  Additionally, "artificially high" prices cannot be equated to supracompetitive prices unless a plaintiff provides evidence to the contrary.  *See, e.g.*, *id.* at 14 (stating that when a plaintiff is able to charge similarly high prices, allegations of a defendant's high prices are insufficient to prove supracompetitive prices).

Under the circumstantial-evidence test, a plaintiff must "(1) define the relevant market[;] (2) show that the defendant owns a dominant share of that market[;] and (3) show that there are significant barriers to entry and that existing competitors lack the capacity to increase their output in the short run."  *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995).

Upon consideration of the FAC, the Court finds that Plaintiffs' allegations of market power are conclusory at best and cannot satisfy either the direct-evidence test

or the circumstantial-evidence test.  In regards to the direct-evidence test, there are no statements in the FAC that illustrate Defendants' ability to affect the marketwide quantity of rare coins by suppressing their own supply of rare coins.  Furthermore, Plaintiffs make no comparison between the "higher prices" consumers are forced to pay on the CCE website because of Defendants' anticompetitive actions and prices on other real-time trading platforms.

Under the circumstantial-evidence test, Plaintiffs do not allege specific facts demonstrating that Defendants control a substantial share of the market for real-time trading in numismatic materials.  Plaintiffs claim that "the CCE website is the largest and most active online trading platform for numismatists in the United States" and that the website "is the principal dealer-to-dealer exchange" for rare coins.  (FAC ¶¶ 82, 86.)  However, Plaintiffs do not compare the CCE website to any other real-time trading platform.  The CCE website may be the largest online trading platform for rare coins, but it is unclear whether alternative platforms are close in size or can compete with CCE's trading activity.  Plaintiffs seem to be equating the CCE website with the entire market for real-time trading in numismatic materials, but the FAC alleges no facts to illustrate the nature of other real-time trading websites in order to support this conclusion.

As a result of this failure to satisfy the threshold requirement of market power, Plaintiffs cannot state a cause of action under either Section 1 or the Cartwright Act.  Defendants' Motion to Dismiss is therefore **GRANTED** with respect to Claims 1 and 5 of Plaintiffs' FAC.  The Court need not address Defendants' other arguments regarding Plaintiffs' ability to properly allege a conspiracy to restrain trade or a legitimate antitrust injury.  (Mot. 8–10.)

2.    *Violation of Section 2*

Section 2 prohibits actual monopolization, attempted monopolization, and conspiracy to monopolize.  15 U.S.C. § 2.  Plaintiffs allege that Hall and DHRC have violated Section 2 by maintaining an actual "monopoly in the market for real-time

trading in numismatic materials" by entering into a secret allocation agreement and engaging in price fixing to "destroy competition."  (FAC ¶ 198–204.)  Defendants' position is that Plaintiffs fail to demonstrate any Defendant's ability to eliminate competition. (Mot. 10–12.)  Defendants also assert Plaintiffs' argument regarding the CCE website as an essential facility is without merit.  (*Id.*)

A successful pleading of actual monopolization has two elements:  "(1) the possession of monopoly power in the relevant market[;] and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1043–44 (9th Cir. 2009) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)).

This Court has already determined that Plaintiffs' allegations of Defendants' market power are insufficient to sustain a claim under Section 1 and the Cartwright Act.  Since an allegation of market power is also required to prove the existence of a monopoly, it follows that Plaintiffs' monopolization claim against Defendant must fail.  Consequently, the Court **DISMISSES** Claim 2 in Plaintiffs' FAC without turning to Defendants' essential facility argument.

3.     *Violation of Section 3*

Plaintiffs' third cause of action contends that Hall and DHRC's exclusive-dealing agreement violates Section 3 of the Clayton Act because it "substantially decrease[s] competition and . . . create[s] a monopoly."  (FAC ¶ 213.)  More specifically, Plaintiffs state that Defendants' agreement with third-party dealers excludes them from participating in CCE website deals.  (*Id.* 151.)  Defendants argue that Section 3 only prohibits tying agreements, and therefore Plaintiffs' claim is invalid. (Mot. 13.)

Defendants incorrectly read and interpret the Clayton Act.  It is true that Section 3 prohibits tying agreements.  *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 34 (2006).   But Section 3 also prohibits exclusive dealing.  *Omega Envtl., Inc. v.*

13

1    *Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997).  Under Section 3, it is illegal "to

2    lease or make a sale or contract for sale of goods . . . on the condition, agreement, or

3    understanding that the lessee or purchaser thereof shall not use or deal in the goods . . .

4    of a competitor . . . of the lessor or seller, where the effect . . . may be to substantially

5    lessen competition or tend to create a monopoly."  15 U.S.C. § 14.  In other words,

6    Section 3 prohibits exclusive dealing arrangements that are likely to significantly

7    hinder market competition.  *Omega Envtl., Inc.*, 127 F.3d at 1162.  To determine the

8    extent to which an exclusive dealing arrangement hinders competition, courts must

9    look at the market share affected by the arrangement.  *Id.*  Like other antitrust

10   violations, exclusive dealing arrangements are subject to analysis under the rule of

11   reason.  *Id.*

12         As previously mentioned, Plaintiffs have failed to establish Defendants' market

13   power per the rule of reason.  Therefore, Plaintiffs' Clayton Act claim must be

14   **DISMISSED**.

15   **B.   VIOLATION OF THE LANHAM ACT**

16         In addition to their antitrust claims, Plaintiffs allege that Defendant Hall made

17   false advertisements on the CCE trading website in violation of the Lanham Act, 15

18   U.S.C. §§ 1051–1141n.  (FAC ¶¶ 219–32.)  Defendants contend that Plaintiffs have

19   no standing to bring a Lanham Act claim, and even if they did, Plaintiffs have not

20   properly alleged an injury.  (Mot. 15.)  Furthermore, Defendants argue that the

21   heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure

22   applies.  (*Id.*)  Because Plaintiffs have not met this standard, Defendants aver that

23   Plaintiffs' Lanham Act claim should be dismissed.  (*Id.*)

24         To succeed in a claim for false advertising under the Lanham Act, 15 U.S.C.

25   § 1125(a)(1)(B), a plaintiff must establish that:

26         (1) the defendant made a false statement either about the plaintiff's or its

27         own product; (2) the statement was made in commercial advertisement or

28         promotion; (3) the statement actually deceived or had the tendency to

1    deceive a substantial segment of its audience; (4) the deception is
2    material; (5) the defendant caused its false statement to enter interstate
3    commerce; and (6) the plaintiff has been or is likely to be injured as a
4    result of the false statement, either by direct diversion of sales from itself
5    to the defendant, or by a lessening of goodwill associated with the
6    plaintiff's product. *Newcal Indus.*, 513 F.3d at 1052 (internal quotations
7    omitted).

8    Further, to have standing, a plaintiff must demonstrate that the false statement caused
9    a "competitive" commercial injury. *Jack Russell Terrier Network of N. Cal. v. Am.*
10   *Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005). In other words, the injury
11   must hinder or be likely to hinder the plaintiff's ability to compete with the defendant.
12   *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011).

13   Analysis of the FAC demonstrates that Plaintiffs lack standing to bring their
14   Lanham Act claim before the Court. This claim is alleged against Defendant Hall,
15   Plaintiffs' "direct commercial competitor . . . in the numismatic materials business."
16   (FAC ¶ 220.) However, the FAC does not explain how Hall's false advertisements on
17   the CCE website hinder Plaintiffs' ability to compete with Hall. Rather, Plaintiffs
18   only state that the false advertisements induced rare-coin dealers, including
19   themselves, to become CCE members and engage in transactions for PGCS graded
20   coins on the CCE website. (*Id.* ¶¶ 228–30.) Plaintiffs also assert they have been
21   injured by Hall's false advertisements because they "bought and sold coins at
22   incorrect prices with third-party dealers who Plaintiffs incorrectly believed had met
23   the CCE membership requirements . . . ." (*Id.* ¶ 231.) While the FAC allows the
24   Court to infer that Hall has harmed Plaintiffs in some manner, none of the allegations
25   support the proposition that Plaintiffs lost or are likely to lose business to Hall because
26   of his advertisements. Consequently, Plaintiffs' Lanham Act claim is **DISMISSED**.
27   The Court need not analyze Defendants' other arguments to dismiss this claim.
28   / / /

1    **C.     CALIFORNIA STATE-LAW CLAIMS[2]**

2            To supplement the foregoing federal claims, Plaintiffs allege that Defendants

3    have violated California law by their acts of (1) unfair competition; (2) intentional

4    interference with prospective economic advantage; and (3) negligent interference with

5    prospective economic advantage.  The Court turns to these issues next and considers

6    Plaintiffs' interference claims jointly.

7            *1.     Unfair Competition*

8            Plaintiffs aver that Hall and DHRC's anticompetitive acts of (1) controlling

9    rare-coin prices via the CCE price list in violation of federal and state antitrust laws;

10   (2) requiring PCGS grading of rare coins in violation of federal and state antitrust

11   laws; (3) participating in a secret allocation agreement and exclusive-dealing

12   agreement with third-party dealers in violation of federal and state antitrust laws; (4)

13   advertising "sham offers" that violate the Lanham Act; and (5) reneging on a coin deal

14   with Plaintiffs violate the UCL.  (FAC ¶ 240.)  Defendants seek to dismiss Plaintiffs'

15   UCL claim, arguing that Plaintiffs lack standing to bring a UCL claim, and even if

16   they did have standing, there is no legal basis for such a claim.  (Mot. 16–19.)

17           In California, the UCL prohibits "any unlawful, unfair, or fraudulent" business

18   practice.  Cal. Bus. & Prof. Code § 17200.  An act can violate any of these three

19   prongs.  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007).

20           Here, Plaintiffs allege that Defendants have engaged in various "unlawful acts

21   or practices," thereby implicating the UCL's unlawful prong.  (FAC ¶ 240.)  This

22   prong of section 17200 borrows violations of other laws and makes those unlawful

23   practices actionable.  *Berryman*, 152 Cal. App. 4th at 1554.  Therefore, there must be

24   a violation of another law on which to predicate a claim under the unlawful prong.  *Id.*

25   As stated previously, the Court finds no violation of Section 1 of the Sherman Act,

26   Section 2 of the Sherman Act, Section 3 of the Clayton Act, or the Lanham Act.  For

27   _____

28   [2] The Court's discussion of Plaintiffs' state-law claims here shall not be construed as the Court's
acceptance of supplemental jurisdiction over these claims should Plaintiffs' federal claims ultimately
fail.  *See* 28 U.S.C. § 1367(c).

1  this reason, Plaintiffs have not pleaded a cause of action under the UCL with regards

2  to their federal and state antitrust claims, nor their false advertising federal claim.

3        Plaintiffs also allege that Hall and DHRC have engaged in "unfair

4  competition," which requires the Court to analyze Plaintiffs' assertions under the

5  unfair prong of the UCL.  (FAC ¶ 254.)  In regards to antitrust violations, the

6  California Supreme Court has said that "unfair" practices are those "that threaten[ ] an

7  incipient violation of an antitrust law, or violate[ ]  the policy or spirit of one of those

8  laws because [their] effects are comparable to or the same as a violation of the law, or

9  otherwise significantly threaten[ ] or harm[ ] competition." *Cel-Tech Commc'ns, Inc.*

10 *v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  Since the Court has already

11 dispensed of Plaintiffs' antitrust claims under the unlawful prong of the UCL, there is

12 no need to restate the analysis here.

13       This leaves the Court to decide whether Defendants failure to follow through on

14 a coin deal with Plaintiffs is sufficiently pleaded as a violation of the UCL's unfair

15 prong.  California courts disagree regarding the definition of "unfair" business

16 practices, often applying three distinct tests.  *McNeary-Calloway v. JP Morgan Chase*

17 *Bank, N.A.*, — F. Supp. 2d —, 2012 WL 1029502, at *27 (N.D. Cal. 2012).  One test

18 requires the necessary public-policy predicate to a consumer unfair-competition action

19 be "tethered to specific constitutional, statutory, or regulatory provisions." *Drum v.*

20 *San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256 (2010).  A second test

21 asks whether an alleged act or business practice is "immoral, unethical, oppressive,

22 unscrupulous or substantially injurious to consumers," thereby requiring the Court to

23 "weigh the utility of the defendant's conduct against the gravity of the harm to the

24 alleged victim." *Id.*  The third test stems from section 5 of the Federal Trade

25 Commission Act, 15 U.S.C. § 45(n), requiring (1) substantial consumer injury; (2) that

26 the injury is not outweighed by countervailing benefits to consumers or competition;

27 and (3) that the injury is one consumers could not reasonably have avoided.  *Id.*

28

Plaintiffs' UCL claim, insofar as it involves Defendants' failure to complete a deal with Plaintiffs, fails all three tests under the unfair prong.  Plaintiffs do not allege any facts that allow the Court to assess whether a specific constitutional, statutory, or regulatory provision has been violated.  Furthermore, the Court cannot determine whether Defendants' acts are immoral, unethical, or oppressive.  And finally, Plaintiffs' FAC does not allege facts that indicate an unavoidable substantial consumer injury that is not outweighed by any benefits that might inhere to consumers of rare coins.  Plaintiffs' unfair competition claim is hereby **DISMISSED** without consideration of Defendants' standing argument.

2.    *Intentional and Negligent Interference with Prospective Economic Advantage*

The seventh and eighth causes of action in Plaintiffs' FAC set forth that Collectors Universe, CCE, Hall, DHRC, East, and Brandow intentionally and negligently interfered with Plaintiffs' contracts with existing rare-coin customers.  (FAC ¶ 259.)  Defendants maintain that Plaintiffs' case is invalid because Plaintiffs failed to allege any of the offenses' required elements.  (Mot. 21.)  Defendants also contend that they cannot be held liable for statements made by third parties on the CCE website.  (*Id.* at 20.)

A valid claim for intentional interference with prospective economic advantage requires:

(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.  *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521–22 (1996).

18

For negligent interference with prospective economic advantage to exist, the defendant must also owe the plaintiff a duty of care.  *Limandri v. Judkins*, 52 Cal. App. 4th 326, 348 (1997).

Plaintiffs' FAC alleges enough facts to sustain claims for both intentional and negligent interference with prospective economic advantage.  Plaintiffs plainly say they had contracts with customers that they expected to do business with in the future.  (FAC ¶ 259.)  Plaintiffs continue by stating that Defendants knew about these contracts since these deals were completed and approved using CCE online forms.  (*Id.* ¶ 260.)  Plaintiffs then posit that Defendants engaged in the intentional act of entering into an agreement with third-party dealers.  (*Id.* ¶ 261.)  This agreement was designed to have the third-party dealers post false statements about Plaintiffs on the CCE website.  (*Id.*)  Defendants did not remove these statements from the website even though they knew these posts existed.  (*Id.* ¶ 262.)  Furthermore, Plaintiffs allege that these false statements caused them to lose business deals and suffer financial losses.  (*Id.* ¶¶ 263, 265.)  And finally, Plaintiffs aver that Defendants owed them a duty to grant an arbitration hearing.  (*Id.* ¶ 286.)  This duty was triggered when Plaintiffs requested such a hearing regarding the third-party dealers' false statements on the CCE website, but Defendants denied Plaintiffs' request.  (*Id.* ¶¶ 132, 286.)

While Defendants argue that they are not responsible for the statements of others, Plaintiffs' FAC allows for the inference that Defendants prompted these statements.  Defendants could have intentionally left the false statements on the website to cause damage to Plaintiffs, and Defendants also denied Plaintiffs' their requested arbitration hearing.  Since the facts pled make Plaintiffs' claim plausible, the Court **DENIES** Defendants' Motion to Dismiss with respect to Plaintiffs' seventh and eighth causes of action.

/ / /

/ / /

/ / /

1   **D.    BREACH OF CONTRACT**

2          Plaintiffs' final cause of action in their FAC argues that Collectors Universe,

3   CCE, Hall, East, and Brandow breached a state-action-related settlement agreement to

4   which they were all parties.  (FAC ¶ 290, Ex. A.)  To allege a breach of contract, a

5   plaintiff must plead "(1) the [existence of a] contract[;] (2) plaintiff's performance or

6   excuse for nonperformance[;] (3) defendant's breach[;] and (4) the resulting damages

7   to plaintiff."  *Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal. App. 4th 1602,

8   1614 (2011).  Plaintiffs assert that they and Defendants Collectors Universe, CCE,

9   Hall, East, and Brandow entered into a settlement, which stated that Defendants could

10  not seek recovery of such fees once they were paid.  (FAC ¶¶ 290, 293.)  Plaintiffs

11  argue that even though these fees were settled, Defendants subsequently breached the

12  agreement by filing a motion for attorney's fees.  (*Id.* ¶¶ 292–93.)  However, Plaintiffs

13  fail to plead that they have fulfilled all the requirements of the settlement agreement.

14  (*See, e.g.*, Ex. A (listing dismissal of state action appeal with prejudice as one of the

15  conditions to settlement).)  Because Plaintiffs do not show in their FAC that they have

16  carried out all their settlement obligations, their breach of contract claim is

17  **DISMISSED**.

18                    **V.    CONCLUSION**

19          For the above reasons, Defendants' Motion to Dismiss Plaintiffs' First

20  Amended Complaint is **GRANTED in PART and DENIED in PART**.  Specifically,

21  the Court **GRANTS** Defendants' Motion with respect to Plaintiffs' Sherman Act

22  claims, Clayton Act claim, Lanham Act claim, Cartwright Act claim, UCL claim, and

23  breach of contract claim.  The Court **DENIES** Defendants' Motion with respect to

24  Plaintiffs' intentional and negligent interference with prospective economic advantage

25  claims.  Plaintiffs may amend their FAC no later than October 10, 2012; if Plaintiffs

26  / / /

27  / / /

28  / / /

fail to do so, their Sherman Act, Clayton Act, Lanham Act, Cartwright Act, UCL, and breach-of-contract claims will be dismissed with prejudice.

**IT IS SO ORDERED.**

October 1, 2012

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**