EDGERTON & WEAVER, LLP
THEODORE C. PETERS (CA Bar No. 235115)
ELIZABETH M. DEL CID (CA Bar No. 250962)
K. ADAM BLOOM (CA Bar No. 268899)
SABRYNE COLEMAN (CA Bar No. 271804)
2615 Pacific Coast Highway, Suite 300
Hermosa Beach, California 90254
Tel: (310) 937-2066 • Fax: (310) 937-2064
E-mail: tpeters@edgertonweaver.com

FILED
CLERK, U.S. DISTRICT COURT
OCT 10 2012
3:55
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

Attorneys for Plaintiffs,
William Dominick and Westwood Rare Coin Gallery, Inc.

**IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

WILLIAM DOMINICK; and WESTWOOD RARE COIN GALLERY, INC.,

Plaintiffs,

vs.

COLLECTORS UNIVERSE, INC.; CERTIFIED ASSET EXCHANGE, INC. a/k/a CERTIFIED COIN EXCHANGE; DAVID HALL RARE COINS; DAVID HALL; CASSI EAST; and MICHAEL BRANDOW; and DOES 1 through 10, inclusive,

Defendants.

Case No. CV 12-04782 ODW (CWx)

**SECOND AMENDED COMPLAINT FOR:**

1. **VIOLATION OF SECTION 1 OF THE SHERMAN ACT (15 U.S.C. § 1)**
2. **VIOLATION OF SECTION 2 OF THE SHERMAN ACT (15 U.S.C. § 2)**
3. **VIOLATION OF SECTION 3 OF THE CLAYTON ACT (15 U.S.C. § 14)**
4. **VIOLATION OF LANHAM ACT (15 U.S.C. §§ 1051 *et seq.*)**
5. **UNREASONABLE RESTRAINT OF TRADE (CAL. BUS. & PROF. CODE § 16720)**
6. **UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200)**
7. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
8. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
9. **BREACH OF CONTRACT**

**DEMAND FOR JURY TRIAL**

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

COPY

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

Plaintiffs William Dominick ("Dominick") and Westwood Rare Coin Gallery, Inc. ("WRCG") (collectively, "Plaintiffs") hereby allege as follows:

**INTRODUCTION**

1. This action arises out of Defendants' attempts to preclude competition and to control prices in the market for real-time trading in numismatic materials in the United States.

2. Numismatic materials include bullion, rare coins, certified coins, bags, state quarters, eagles, foreign coins, and ancient currency.

3. The CCE website is the platform where trades of rare coins are done instantly.

4. Dominick and David Hall ("Hall") were both full-time members on the CCE website through their dealer firms, respectively, WRCG and David Hall Rare Coins ("DHRC").

5. Plaintiffs have a history of executing rare coin and bullion trades on the CCE website in a commercially reasonable and honorable fashion with no customer complaints.

6. WRCG was a member of the CCE website in good standing for 35 years.

7. WRCG conducted ten-times the amount of business on the CCE website as the average dealer, which made it Hall's biggest competitor.

8. Unlike Dominick and WRCG, Hall and DHRC engaged in trades that went awry and became the subject of customer complaints.

9. For instance, Hall once offered to sell eleven gold commemorative coins and then reneged on the offer Plaintiffs accepted it.

10. Hall engaged in this sham offer, as well as similar offers, in order to drive down the prices of gold and precious metals.

11. In 2005, Hall, through his company Collectors Universe, Inc. ("CU"), purchased CCE from American Teleprocessing Corporation.

12. A year before purchasing CCE, Hall resigned as a member of the Professional Numismatic Guild ("PNG") and was therefore no longer subject to PNG's binding arbitration.

13. After purchasing Certified Asset Exchange, Inc. a/k/a Certified Coin Exchange, Inc. ("CCE"), Hall began to engage in anti-competitive behavior within the U.S. market for real-time trading in numismatic materials.

14. Hall entered into a secret allocation agreement with other rare coin dealers to allocate customers seeking to purchase rare coins on the internet in real-time among themselves.

15. Hall, Cassi East ("East") and/or Michael Brandow ("Brandow") oversaw the preparation and disclosure of pricing information posted on the CCE website through which they controlled the price of goods sold in the market for real-time trading in numismatic materials in the United States.

16. Hall entered into an exclusive dealing agreement with other rare coin dealers in order to exclude Plaintiffs, Hall's biggest competitors, from various deals posted on the CCE website.

17. Hall owns Professional Coin Grading Service ("PCGS"), which grades most of the coins sold on CCE, and used his control of PCGS to ensure that the coins that he sold received a higher grade and price, regardless of the actual quality of the numismatic material.

18. During this time, third party dealers posted messages with untruthful and derogatory statements about Plaintiffs on CCE's message boards for other traders to see.

19. Plaintiffs requested an arbitration hearing regarding complaint made against them (as permitted in CCE's rules), but this request was readily dismissed by East and Brandow.

20. Plaintiffs' membership on the CCE website was terminated in June 2010.

///

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

## PARTIES

21. As alleged herein, the parties in this action are in the business of trading, buying, and selling rare coins.

### I. PLAINTIFFS

22. This action is brought by Plaintiffs William Dominick ("Dominick") and Dominick's company, Westwood Rare Coin Gallery, Inc. ("WRCG") (collectively, "Plaintiffs"). Dominick owns WRCG.

23. Dominick is a citizen of the State of Florida.

24. Dominick is a full-time, professional numismatist and rare coin dealer with extensive experience and trading references from current dealers in the rare coin and bullion business. Dominick has been a rare coin dealer for 47 years.

25. A numismatist is a person who studies and/or collects coins, metals, and similar products. Numismatic material includes bullion, rare coins, certified coins, bags, state quarters, eagles, foreign coins, and ancient currency.

26. At all material times, Dominick has been a member of, and arbitrator for, the prestigious Professional Numismatists Guild ("PNG").

27. Dominick is a lifetime member in good standing of 11 Numismatic Associations: (a) The Mid Atlantic Numismatic Association, (b) The Canadian Numismatic Association, (c) Michigan State Numismatic Society, (d) Central State Numismatic Society, (e) Garden State Numismatic Association, (f) Indiana State Numismatic Association, (g) Great Eastern Numismatic Association, (h) Georgia Numismatic Association, (i) American Numismatic Association ("ANA"), (j) Florida United Numismatists, and (k) National Silver Dollar Round Table.

28. Dominick won top awards for his exhibitions at numismatic conventions.

29. Dominick has displayed coins for sale at over 50 ANA National Conventions.

30. Dominick has promoted coin collecting through lectures to The Boy Scouts and local coin clubs for several years.

31. At all material times, WRCG was and is a New Jersey corporation with its principal place of business in Old Tappan, New Jersey, that is authorized to conduct business in the rare coin, bullion, and numismatic material industry in California.

## II. DEFENDANTS

32. Plaintiffs are suing David Hall ("Hall"), David Hall Rare Coins ("DHRC"), Collectors Universe, Inc. ("CU"), Certified Asset Exchange, Inc. a/k/a Certified Coin Exchange ("CCE"), Cassi East ("East"), and Michael Brandow ("Brandow") (collectively, "Defendants"), each of which acted in their individual and independent capacities or in their capacity as agency of each other.

33. Each named Defendant was the agent, servant, employee, partner, or member of a joint venture with the other Defendants.

34. Each of these Defendants was acting within the course and scope of said agency, service, employment, partnership, or joint venture.

35. Each named Defendant was also acting in its independent and individual capacity.

36. This action arises out of Defendants' attempt to preclude competition in the market for real-time trading in numismatic materials in the United States.

### A. David Hall ("Hall") and David Hall Rare Coins ("DHRC")

37. Hall is a citizen of the State of California and resides in Orange County, California.

38. Hall is a full-time, professional numismatist and rare coin dealer.

39. Hall has been in the gold commemorative coin business for at least 30 years.

40. At all material times, Hall owned and owns DHRC.

41. At all material times, DHRC was and is a California corporation that is authorized to do business in Newport Beach, California.

42. At all material times, DHRC was and is a rare coin and bullion dealer firm authorized to do business in California.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy, Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

43. At all material times, Hall has been and is the President, Director, and Chief Executive Officer of Collectors Universe, Inc. ("CU").

44. At all material times, Hall has been and is the Director of Certified Asset Exchange, Inc. a/k/a Certified Coin Exchange ("CCE").

45. Hall is a founding member and the Chief Executive Officer of Professional Coin Grading Service ("PCGS"), which is the primary grading service of rare coins sold and purchased on the CCE website. Hall also sits on the PCGS "Board of Experts."

46. Hall and DHRC are Plaintiffs' direct competitors in the market for real-time trading in numismatic materials in the United States.

**B. Collectors Universe, Inc. ("CU")**

47. CU was founded in 1999 and at all material times, was and is a publicly-traded Delaware corporation in the coin industry with its principal place of business in Santa Ana, California.

48. CU owns PCGS and CCE.

**C. Certified Coin Exchange ("CCE")**

49. At all material times, CCE was and is a Delaware corporation that is based in Santa Ana, California and authorized to do business in California.

50. At all material times, the CCE website was and is the dominant online trading platform of rare coins and numismatic materials on the internet with only one competitor.

51. There is only one other online dealer–to-dealer trading platform in the United States, CoinNet. CoinNet has approximately 400 members. The monthly fee for membership to CoinNet is $59 per month. CoinNet conducts sales primarily by bulletin boards. CoinNet does not offer real-time trading.

52. The CCE website is the only marketplace for dealers to compete for the real-time sale and purchase of sight-seen and sight unseen numismatic materials in the United States. The monthly fee for membership to CCE is either $200 per month, for a limited membership, or $425 per month, which allows a full-member firm to post bid

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

and ask prices, execute online trades with other member firms and use all other features of the system. (Limited members can see bid/ask information, but are not able to execute online trades.)

**D. Professional Coin Grading Service ("PCGS")**

53. Coins traded and sold on the CCE website are primarily graded by PCGS.

54. PCGS is a division of CU, which was merged into CU in June 2008, and therefore is not an independent corporate entity. PCGS has its principal place of business in Santa Ana, California. PCGS holds itself out to consumers as a grading service only, and as such, independent from buying, selling and/or having financial interests in the coins which it grades. Principals of PCGS, including Hall, purchase and sell coins graded and labeled by PCGS.

55. In 1990, the FTC sued PCGS for various violations of the FTC Act. The United States District Court for the District of Columbia issued a Consent Decree in the matter of Federal Trade Commission v. Professional Coin Grading Service, Inc. (Case No. 901982), in which the court ordered, in part, that PCGS was permanently restrained and enjoined from representing, directly or by implication, that PCGS grading is "objective," "consistent," or "unbiased," if such representation is contrary to fact. Attached hereto and incorporated by reference as **Exhibit A** is a true and correct copy of the Consent Decree issued by the Federal Trade Commission.

56. PCGS is also permanently restrained and enjoined from "discussing, influencing, suggesting, or directing the grading of a specific coin or coins in any way prior to the assignment of the final grade, on the basis of: a. ownership of the coin(s); financial interest in the coin(s); or business dealings between (i) the defendant, its officers, independent contractors or employees, and (ii) the owner(s) of, submitter(s) of, or those holding a financial interest in, the coin(s)."

**E. Cassi East ("East")**

57. East is the President of CCE and a personal friend of Hall, and is a citizen of the State of California and a resident of Orange County, California.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**F. Michael Brandow ("Brandow")**

58. Brandow is the Sales Director of CCE, a personal friend of Hall, and a citizen and resident of the State of Texas.

**G. Third Party Dealers**

59. Third party dealers are dealers who have been in business for less than one year at the time they applied for membership to the CCE website and were accepted as members, have less than $25,000 in total assets at the time they applies for membership to the CCE website and were accepted as members, have filed for bankruptcy, have a felony record, have been investigated by the FTC for allegedly creating an artificial market, false advertising, forming a Ponzi scheme or failing to make required disclosures to consumers, have been accused of grand theft, posted messages with insulting and untruthful derogatory statements on the message board on the CCE website which was open to all CCE members, are the subject of complaints to CCE by Plaintiffs, and/or do business in Newport Beach, California (collectively, "Third Party Dealers").

**H. Doe Defendants**

60. The true names, capacities, and identities of Defendants Does 1 through 10 are unknown to Plaintiffs at this time.

61. Plaintiffs are informed and thereon allege that each fictitiously named Doe Defendant is liable to Plaintiffs under the causes of action alleged in this First Amended Complaint.

62. Plaintiffs will amend this First Amended Complaint to set the true names, capacities, and identities of Defendants Does 1 through 10 when that information is ascertained.

63. At all material times, each named Defendant was the agent, servant, employee, partner or member of a joint venture with the other Defendants.

64. At all material times, each Defendant was acting within the course and scope of said agency, service, employment, partnership or joint venture.

65. At all material times, each named Defendant was acting in its, his or her independent and individual capacity.

## JURISDICTION AND VENUE

66. Plaintiffs seek compensatory relief for lost profits and damages from 2008 to the present date in an amount to be proven at trial, but known to exceed the jurisdictional requirements of this Court.

67. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this First Amended Complaint presents a federal question.

68. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1337 because this First Amended Complaint includes a claims under the Sherman Act, which protects trade and commerce against restraints and monopolies.

69. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 because this First Amended Complaint includes a claim under the Lanham Act.

70. The Court has supplemental subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

71. The Court has personal jurisdiction over Defendants based on the activities alleged in this First Amended Complaint, most, if not, all of which, were performed within this jurisdiction.

72. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(c) because a substantial part or all of the events or omissions giving rise to the claims occurred in this District.

## PLAINTIFFS' STANDING TO BRING THIS ACTION

73. As a direct and proximate result of the acts and omissions of CU, CCE, Hall, DHRC, East and Brandow, described below, Plaintiffs have sustained losses in the form of monetary damages and economic harm in an amount to be proven at trial.

74. By the time its CCE membership was revoked in June 2010, WRCG had been a CCE member in good standing for 35 years and had conducted between 10 and 15 million in business annually on the CCE website in that time.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

75. This was as much as ten-times the amount of business conducted by other dealers.

76. From October 2010 to September 2011, Plaintiffs' sales were approximately $35 million in the rare coin and bullion business.

77. From January 2012 to March 2012, Plaintiffs' sales were only approximately $1,187,000.

78. In light of its volume of trading, WRCG was and is one of Hall's and DHRC's biggest competitors.

79. Before and after 2005, Plaintiffs executed contracts for the purchase of rare coins and bullion in the U.S. market for real-time trading in numismatic materials, in a commercially reasonable and honorable fashion with no customer complaints and maintained trading agreements with old customers.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### I. RELEVANT MARKET

80. The relevant market is the market for real-time trading in numismatic materials in the United States.

81. Real-time refers to the rare coin purchases and sales that are done instantly on the internet.

82. The product market is rare coins traded in real-time.

83. The platform for the relevant market is the CCE online trading platform on the internet ("CCE website").

84. The geographic market for the relevant market is the United States.

85. The CCE website is the largest and most active online dealer-to-dealer trading platform for numismatists in the United States and is the exclusive platform in the numismatic industry where rare coins and other numismatic materials are purchased and sold in real-time across interstate lines in the United States.

///

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**A. Real-Time Trading**

86. Online trading in real-time, as facilitated by the CCE website, is the principal way to transact business for rare coin dealers because the price of metal is extremely volatile.

87. Online real-time coin trading is unlike in-person coin trading because it allows traders to capitalize or speculate on the instantaneous fluctuations in the price of precious metals, similar to a stock exchange.

88. The ability to trade numismatic materials in real-time is an invaluable service offered exclusively by CCE on its website, access to which is necessary to compete in the market for real-time trading of numismatic materials in the United States. Online trading in real-time offers a significant advantage over in-person trading since it allows traders to capitalize on the perpetual fluctuations in the price of precious metals.

**B. Coin Grading**

89. Coin grading is the process of determining the condition or 'grade' of a coin, which is a key factor of a coin's value as a collector's item or investment. Grading a coin requires an analysis of the quality and physical condition of the coin, which is known as the 'technical' component of the coin's grade.

90. Another component of a coin's quality is known as the 'eye appeal' of the coin, which is also extremely important to the value of a coin. 'Eye appeal' is an intangible component of evaluating a coin's grade that combines a coin's luster, contact marks, toning and sharpness of strike. 'Eye appeal' is vital in evaluating modern coins. Numismatists often use the terms 'high end' or 'premium quality' to refer to a coin that has good eye appeal

91. There is considerable overlap between the 'technical' component of the coin's grade and the grading of the 'eye appeal' component of the coin's grade.

92. Another factor that affects a coin's grade is its 'pedigree,' a term used by numismatists to refer to the previous ownership and/or lineage of a coin. This is an important temporal factor and helps numismatists access the 'originality' of a coin, as

understanding the chain of title and knowing the coin's origin diminishes the chances that the coin has been 'doctored,' i.e., tampered with or physically manipulated in a fraudulent manner.

93. Another factor that affects a coin's grade is its 'freshness,' which refers to coins which have not made appearances on the open or private coin market in a number of years. When 'fresh' coins do come to the market, they tend to generate excitement and premium prices for the sellers.

94. As a result of the subjective and inconsistent nature of coin grading, systems have developed in the numismatic industry to offset the inherent uncertainty of a coin's true 'untampered' condition (an important determinant of a coin's value) so that collectors and non-expert investors might be assured that a coin's condition has been properly determined and labeled with as much precision and long-term stability as possible.

95. Coins can be graded adjectivally (poor, fair, good, very good, fine, very fine, extremely fine, about uncirculated, and 'mint state,' i.e., uncirculated) or numerically, using a scale of 1 to 70 where the label for a graded coin may contain a number from 1 (lowest or 'poor') to 70 (highest, or 'uncirculated'). Between the numbers 60 and 70, coins are designated by different levels of 'Mint State,' or 'circulated.' This 1-70 grading scale, known as the 'Sheldon System,' has been in use since 1948. The Sheldon numeric 60-70 mint state labeling designations often reflect subtle differences between the conditions of high-grade coins.

96. PCGS adopts the Sheldon System of numerical grading. PCGS has rejected formal incremental grading upon founding of the grading companies as recently as 2008.

**C. Trading Certified Coins**

97. The CCE website is the principal dealer-to-dealer exchange of certified U.S. rare coins in the United States with a sole competitor. It is the only dealer-to-dealer exchange of U.S. rare coins traded *in real-time* in the United States

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

98. Certified coins are coins that have been graded and valued by a coin grading service.

99. CCE's messaging system, known as CCE/FACTS, is the largest dealer-to-dealer numismatic network in the world.

100. CCE/FACTS allows a dealer in the United States to find a unique coin or buyer almost instantly.

101. Live trading occurs daily on CCE, Monday through Friday, excluding federal holidays, between 12 noon and 5 p.m. Eastern time.

102. On an average trading day, over 500 dealers throughout the United States buy and sell coins instantly on CCE.

103. Most of the trading on the CCE website is executed on the bid side.

104. At any given time, there are over 100,000 bid and ask prices on the CCE website.

105. When a bid matches an offer, a transaction occurs, similar to a stock exchange.

106. There are hundreds of thousands of dollars in sales made on a typical trading day on the CCE website.

107. CCE's Certified Quote System ("CQS") provides price information and the necessary forms and communications software to execute trades with other CCE members on the CCE website.

**D. Product Market**

108. The products purchased, sold, or otherwise traded on the CCE website are all types of numismatic material, including bullion, rare coins, certified coins, bags, state quarters, eagles, foreign coins, and ancient currency.

109. The rare coins that are traded or collected by CCE dealers and CCE consumers are reasonably interchangeable goods that can be used by consumers for the same purpose, to wit, collecting rare coins.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

110. The economic substitutes of the relevant products are rare coins of similar grading and value that can be traded online by coin dealers.

## II. MARKET POWER

111. Hall owns DHRC, a rare coin and bullion dealer firm. Hall is also the president, director and chief executive officer of Defendant CU. CU owns Defendant CCE and Hall is a director. CCE is operated by Hall, Defendant East (president) and Defendant Brandow (sales director), who are personal friends of Hall. Hall is also the founding member and chief executive officer of PCGS, the primary grading service of rare coins sold and purchased on the CCE website.

### A. Market Share

112. The market for real-time trading in numismatic materials is intended to operate on supply and demand as it runs off of real-time bidding.

113. Hall and DHRC have acquired a dominant share – over 50% -- of the relevant market for real-time trading in numismatic materials in the United States because they exercise carte blanche liberty to make sales on the CCE website and dictate which grading services to use, which is Hall's own company, PCGS.

114. Hall and DHRC have acquired a dominant share of the relevant market because by way of a secret allocation agreement ("Secret Allocation Agreement") that divides and distributes the customers on the CCE website primarily among Hall, DHRC, and Third Party Dealers.

115. Hall and DHRC have also acquired a dominant share of the relevant market by way of an exclusive dealing agreement ("Exclusive Dealing Agreement") between them and Third Party Dealers for the sale of tangible rare coins and other numismatic materials in the United States, which had the effect of excluding Hall's and DHRC's main competition, Plaintiffs, from the benefit of deals posted on the CCE website by Hall, DHRC or Third Party Dealers for numismatic materials.

116. Hall's and DHRC's dominant share of the relevant market's productive assets was obtained as a result of their unrestricted membership on the CCE website, the

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

Secret Allocation Agreement, and the Exclusive Dealing Agreement, all of which demonstrate that Hall and DHRC possess sufficient leverage to restrict marketwide output and increase prices. That is because Hall and DHRC have an allocated pool of customers and deals for the sale of coins that they exclusively can pursue, whereas Hall's and DHRC's main competitors, including Plaintiffs, are not privy to these secret arrangements. As a result of these secret agreements, Hall's and DHRC's competitors are forced to drive down coin prices whereas Hall and DHRC are not forced to incur a loss.

### B. Entry Barriers

117. There are significant barriers to entry in the relevant market for real-time trading in numismatic materials because the Secret Allocation Agreement and Exclusive Dealing Agreement in place are solely among and for the benefit of Hall, DHRC, and Third Party Dealers.

118. New rivals in the relevant market for real-time trading in numismatic materials in the United States are barred from entering the market because customers on the CCE website have already been divided and distributed among Hall, DHRC and Third Party Dealers pursuant to the Secret Allocation Agreement, and the Exclusive Dealing Agreement limits the sale of tangible rare coins and other numismatic materials in the United States to Hall, DHRC, Third Party Dealers, and no one else.

119. The additional long-run costs that were not incurred by Hall and DHRC but that must be incurred by new entrants in the relevant market are the costs incurred in finding customers in the relevant market and deals for the sale of tangible rare coins and other numismatic materials in the United States that are not covered by the Secret Allocation Agreement and Exclusive Dealing Agreement.

120. Factors in the market that deter entry, while permitting Hall and DHRC to earn monopoly returns, are the existence and enforcement of the Secret Allocation Agreement and Exclusive Dealing Agreement that purely benefit Hall, DHRC and Third Party Dealers.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

121. Hall and DHRC control the essential resources in the relevant market, namely, the customers on the CCE website which have been distributed pursuant to the Secret Allocation Agreement and the ability to engage in sales of tangible rare coins and other numismatic materials in the United States with Third Party Dealers by way of the Exclusive Dealing Agreement, because Hall and DHRC put these agreements in effect in the first place.

122. Hall controls another essential resource in the relevant market, namely, PCGS which is the primary coin grading service used by CCE and from which CCE pricing information is derived. The PCGS price guide is maintained by Hall and is the property of CU. The complete list of CCE pricing information is offered only to CCE members, access to which critically affects the sale of rare coins and other numismatic materials.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

123. These entry barriers are capable of constraining the normal operation of the market and are unlikely to be self-correcting because the Secret Allocation Agreement and Exclusive Dealing Agreement are not a natural result of the market, but, instead, are illegal arrangements that Hall and DHRC established to obtain monopoly power in the relevant market.

124. Natural market forces will not cure these entry barriers Hall and DHRC created these barriers and intend to keep them in place, unless the Court intervenes and orders the end of this illegal conduct.

**C. Barriers To Expansion**

125. As a result of Hall's and DHRC's market power, existing competitors in the relevant market for real-time trading in numismatic materials in the United States (with the exception of Third Party Dealers engaged in the Secret Allocation Agreement and Exclusive Dealing Agreement), including Plaintiffs, face barriers to expand output to challenge Hall's and DHRC's high prices because these existing competitors are not privy to the financial benefits of the Secret Allocation Agreement and/or the Exclusive Dealing Agreement.

126. With the exception of Third Party Dealers, competitors in the relevant market for real-time trading in numismatic materials in the United States are not able to increase output or to produce more than the relevant market demands at a competitive price because customers on the CCE website have already been distributed and divided among Hall, DHRC and Third Party Dealers pursuant to the Secret Allocation Agreement.

127. Competitors in the relevant market for real-time trading in numismatic materials in the United States are further unable to increase output or produce more than the relevant market demands at a competitive price because Hall and DHRC dictate that the primary grading service to use on the CCE website is Hall's company, PCGS.

128. Competitors in the relevant market for real-time trading in numismatic materials in the United States are further unable to increase output or produce more than the relevant market demands at a competitive price because Hall selectively picks – based on the products he has for sale – which prices from his company PCGS's price guide to list on the CCE website and to disclose to the public.

**D. Background**

129. Hall, East, and Brandow operate CCE.

130. Immediately before Hall purchased CCE through his company, CU, in 2004, Hall resigned as a member of the Professional Numismatic Guild ("PNG").

131. PNG members are subject to binding arbitration.

132. During the entire time that Hall has owned CCE, Hall has not been subject to binding arbitration with PNG.

**1. Graded Coins Sold On The CCE Website**

133. Hall and DHRC trade rare coins on CCE.

134. Most of the rare coins traded on the CCE website are graded by PCGS.

135. Hall's and DHRC's sales on the CCE website involve the sale of PCGS graded coins.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

136. Hall, as a dealer through his dealer firm, DHRC, and through his position as Chief Executive Officer of PCGS and a director of CCE, ensures that the rare coins he sells on the CCE website receive a higher grade and price than other dealers' coins of similar value.

137. Specifically, Hall exploits his ownership and control of these entities to manipulate the relevant market in his favor. As Chief Executive Officer of PCGS, Hall manipulates the grading and pricing of rare coins sold by his company, DHRC, and by competitors so that DHRC's coins are valued more highly than its competitors' comparable coins. Also, as director of CCE and a close friend of its officers, East and Brandow, Hall arbitrarily determines which CCE applicants will be permitted to access CCE and which will be rejected and excluded from the real-time market for numismatic materials in the United States.

**2. Membership On The CCE Website**

138. Brandow oversees CCE's membership and sales.

139. Membership to CCE is necessary to participate in the U.S. market for real-time trading in numismatic materials since there is no other forum in the United States other than the CCE website that offers the ability to trade in real-time.

**a. CCE Membership Requirements**

140. East and Brandow exercise exclusive, unbridled discretion regarding CCE membership admissions.

141. To become a CCE member, an applicant must: (a) be a full-time numismatic firm; (b) have maintained an established place of business for over one year; (c) obtain three member firm dealer references; and (d) have previous satisfactory membership as a principal or executive of a member firm.

142. East and Brandow allow Third Party Dealers to be members of CCE.

143. Third Party Dealers do not meet the requirements to be CCE members.

///

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

144. East and Brandow allow Third Party Dealers to continue to conduct business on CCE because of their Secret Allocation Agreement with Hall and DHRC, which is alleged below.

**b. Associate Members vs. Full Members**

145. East and Brandow have exercised exclusive, unbridled discretion to determine whether a member can be an associate member or a member firm.

146. Associate members of the CCE website may view prices (with dealer IDs), but cannot post prices or execute online trades with full-member firms or any other members of CCE. Associate members pay a monthly fee between $199 and $239.

147. Only full-member firms may post bids, ask prices and execute trades with other full members on the CCE website. Full-time member firms pay a monthly fee of $425.

148. Other members are not allowed to purchase more than $50,000 in coins in a single trading day for bids posted, without the express consent of CCE.

149. CCE may assign credit limits to each member over which the member may not post bids.

150. Despite these rules, CCE, East and Brandow have not restricted the sales of Hall or DHRC on CCE.

151. Apart from giving Hall and DHRC carte blanche liberty to make sales on the CCE website, CCE, East, and Brandow also allow Hall and DHRC to dictate which grading services to use, notably Hall's own company, PCGS.

152. During the time period before June 2010, Brandow also allowed Third Parry Dealers who did not meet the CCE membership requirements to be members.

**c. Termination Of CCE Membership**

153. Despite meeting the requirements to become a CCE member, CCE, Hall, East and/or Brandow can still determine to deny or terminate any CCE membership.

154. CCE, Hall, East and/or Brandow exercise total discretion and terminate membership with or without cause.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

155. East is responsible for sending notice to dealers whose membership on the CCE website has been terminated.

**d. Plaintiffs' Membership On CCE**

156. At all material times, CCE, Hall, East, and/or Brandow were aware that Plaintiffs met the requirements to be members of the CCE website.

157. Before June 2010, Plaintiffs requested an arbitration hearing (as permitted in CCE's rules) with respect to improper customer complaints, and this request was readily dismissed by East and Brandow.

158. In June 2010, Plaintiffs' membership on the CCE website was terminated.

**E. Secret Allocation Agreement**

159. Hall and DHRC entered into an implied agreement to allocate customers on the CCE website among themselves and independent, Third Party Dealers whose economic interests diverged from the economic interests of Hall and DHRC.

160. Hall, DHRC and Third Party Dealers have specific divergent economic interests because they are separate business entities with financial objectives that are unique to their respective operations.

161. The Secret Allocation Agreement constitutes an unreasonable restraint on trade because it secretly divides and distributes the customers on the CCE website primarily among Hall, DHRC and Third Party Dealers, thereby limiting Plaintiffs' access to customers in the market for real-time trading in numismatic materials in the United States.

**F. Price Fixing**

162. The preparation of the pricing information revealed on the CCE website constitutes price fixing.

163. The CCE website provides only members with tick-by-tick prices on gold, silver, platinum and palladium directly on their computer screens in real-time, while markets are open.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

164. Only CCE full-member dealers can post on the CCE website their price differential off the spot price on the CCE website, and their prices will automatically be updated in selected bullion-related coins.

165. Access to price information disclosed on the CCE website critically affects the sale of rare coins and other numismatic materials.

166. The pricing information posted on the CCE website purports to contain the latest spot metal and bullion coin prices.

167. The prices posted on the CCE website form the basis of several price-reporting services.

168. Hall, East and/or Brandow oversee the preparation and disclosure of the pricing information revealed on the CCE website. Pricing information contained on the CCE website is taken from the PCGS price guide, which is the property of CU and maintained by Hall.

169. Hall, East and/or Brandow determine what and when information from the PCGS price guide is disclosed on the CCE website to rare coin consumers and dealers in the United States.

170. Hall, East and/or Brandow selectively pick which prices from the PCGS price guide to disclose to the public.

171. CCE reports only a sample of its prices to the Associated Press and Bloomberg, but these disclosures are made only after bid and ask information has been acquired (not in real-time).

**G. Exclusive Dealing Agreement**

172. Hall and DHRC entered into an Exclusive Dealing Agreement with Third Party Dealers for the sale of tangible rare coins and other numismatic materials in the United Sates.

173. The Exclusive Dealing Agreement has and had the effect of substantially decreasing competition or tending to create a monopoly because Hall's and DHRC's

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

main competition, Plaintiffs, were wholly excluded from the benefit of deals posted on the CCE website by Hall, DHRC and/or Third Party Dealers for numismatic materials.

174. Hall and/or DHRC posted sham offers on the CCE website and failed to complete deals on accepted offers to drive down the price of precious metals.

175. Plaintiffs were the victims of one such sham offer when Dominick and/or WRCG accepted Hall's and/or DHRC's offer to sell eleven gold commemorative coins on the CCE website, but Hall and/or DHRC only delivered one of the eleven coins.

176. Hall and/or DHRC did not complete this transaction because Plaintiffs are not a part of the Exclusive Dealing Agreement Hall and DHRC has with other dealers.

177. Hall and DHRC have found ways to lower coin prices without incurring a loss in order to force their competitors to lower their prices, sell coins at a discounted price, and lose profits that they would not have suffered but for Hall's and DHRC's actions of posting sham offers.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

## III. MONOPOLIZATION

178. Hall and DHRC have a monopoly in the market for real-time trading in numismatic materials in the United States because they possess monopoly power with respect to the membership and trading rules on the CCE website.

179. Hall and DHRC have acquired a greater monopoly power by excluding Dominick and WRCG from CCE, thereby expanding their portion of the customer base.

## IV. ESSENTIAL FACILITY

180. Defendants' actions have denied Plaintiffs access to the essential facility of CCE, a unique marketplace with no comparable duplicates.

181. By denying Plaintiffs access to CCE, Defendants have denied Plaintiffs access to the critical ability to engage in real-time online trading, and the market information on the CCE.

182. By exploiting his ownership of CCE and denying Plaintiffs access to the CCE website, Hall effectively eliminates his largest competitors from competing in a market where access to the CCE website is necessary for participation in such market.

183. In the U.S. market for real-time trading in numismatic materials, Hall controls the market upstream, specifically, the distribution and marketing of rare coins on the CCE website, and the market downstream, specifically, the distribution and sale of rare coins. Hall achieves this degree of control by exploiting his ownership of CCE, the dominant online numismatic marketplace and the only marketplace that offers real-time trading, to determine which dealers of numismatic materials have access to the CCE website, thereby barring his competitors, including Plaintiffs, from accessing the essential facility of CCE.

## V. ANTICOMPETITIVE EFFECTS

184. The Secret Allocation Agreement has anticompetitive effects within the relevant market, that is, the market for real-time trading in numismatic materials in the United States.

185. The Secret Allocation Agreement infringes on CCE customers' reasonable expectation to choose independently with whom they would like to engage in business in the United States.

186. The Secret Allocation Agreement prevents CCE customers from trading in real-time with rare coin dealers in the United States who are not parties of the Secret Allocation Agreement.

187. The Secret Allocation Agreement forces CCE customers in the United States to purchase only coins graded by PCGS because PCGS graded coins are the goods that are predominately and primarily made available on the CCE website.

## VI. UNREASONABLE RESTRAINT OF TRADE

188. The Secret Allocation Agreement unreasonably restrains trade under either a per se rule of illegality (per se violation of antitrust or unfair competition laws) or a rule of reason analysis because the Secret Allocation Agreement constitutes price fixing, as alleged above.

///

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy, Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

## VII. ANTITRUST INJURY

189. The Unreasonable Restraint of Trade has resulted in multiple antitrust injuries to Plaintiffs, who are competitors of Hall and DHRC, and other CCE customers.

190. These antitrust injuries affect interstate commerce.

191. The Unreasonable Restraint of Trade has substantially and severely constrained U.S. CCE customers' and Plaintiffs' free and open access to all rare coin dealers who are located throughout the United States and engage in interstate commerce, to wit, trades and purchases of rare coins and other numismatic materials in the United States.

192. The Unreasonable Restraint of Trade has skewed sales in the U.S. market for real-time trading in numismatic materials in Hall, DHRC and/or Third Party Dealers' favor.

193. Consumers on CCE expect to engage in voluntary transactions and pay reasonable prices driven by supply and demand.

194. However, consumers on CCE are secretly being forced to engage in transactions driven by the specific business interests of Hall, DHRC and Third Party Dealers.

195. The Unreasonable Restraint of Trade has detrimentally forced rare coin consumers and Plaintiffs to purchase rare coins at a higher price than they would have absent the Secret Allocation Agreement.

196. The Unreasonable Restraint of Trade has successfully resulted in Hall's control over the type of coins that may be purchased on the CCE website to the detriment of CCE consumers and dealers, including Plaintiffs.

197. On the CCE website, rare coin consumers and dealers may principally transact in coins valued and graded by Hall's grading company, PCGS, even though there are other reputable grading services for rare coins and numismatic materials.

///

198. The decision to utilize PCGS as the primary coin grading service on CCE is motivated solely by Defendants' desire to benefit themselves at the expense of CCE consumers.

199. The Unreasonable Restraint of Trade has limited CCE rare coin consumers from accessing the full and accurate list of pricing information posted on CCE, which contains the latest spot prices on metal and bullion coin including gold, silver, platinum, and palladium.

200. The price of coins that determine the pricing information posted on the CCE website is controlled by CCE member dealers, who are arbitrarily selected by East and Brandow at Hall's direction.

201. The final list of pricing information contained on the CCE website is determined by the specific business interests and self-interests of Hall, DHRC and/or Third Party Dealers.

202. There is little transparency as to how CCE's pricing information is prepared before parts of it are made available to CCE members or the public.

203. This lack of transparency substantially limits rare coin consumers and dealers' free access to essential price information about numismatic materials, including rare coins.

204. Accurate price information is valuable and necessary because it reflects the market value of goods and allows dealers and consumers to conduct business in an open and honest market environment.

205. The disclosure of complete and accurate pricing information is imperative because the market information on this list affects numismatic services in the United States. This list changes constantly and the prices posted on the CCE website form the basis of many price-reporting services.

206. Despite its significance in the market for real-time trading in numismatic materials in the United States, the full pricing information from the PCGS price guide is not available to the vast majority of rare coin consumers, and only CCE member dealers

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

(specifically, full-member dealers) can post their price differential off the spot price to update the price of selected bullion-related coins.

207. All of the aforementioned injuries stem from the anticompetitive effects of Hall's and DRHC's Secret Allocation Agreement.

208. Plaintiffs are entitled to injunctive relief, restitution, attorney's fees and costs as explained below.

## FIRST CAUSE OF ACTION

## VIOLATION OF SECTION 1 OF THE SHERMAN ACT (15 U.S.C. § 1)

## (Against Defendants Hall and DHRC)

209. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 208 in this Second Amended Complaint.

210. The relevant market at issue is the market for real-time trading in numismatic materials, in the United States which is alleged above and incorporated herein by reference.

211. There is a Secret Allocation Agreement, which is alleged above and incorporated herein by reference.

212. The specific divergent economic interests of Hall, DHRC and Third Party Dealers are alleged above and incorporated herein by reference.

213. The Secret Allocation Agreement entails an Unreasonable Restraint on Trade, which is alleged above and incorporated herein by reference.

214. The Secret Allocation Agreement unreasonably restrains trade under either a per se rule of illegality or a rule of reason analysis because it constitutes price fixing, which is alleged above and incorporated herein by reference.

215. The covert allocation of clients and potential sales in the market for real-time trading in numismatic materials in the United States among Hall, DHRC and Third Party Dealers has anticompetitive effects within the relevant market, as alleged above and incorporated herein by reference.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

216. The Unreasonable Restraint of Trade arising from the Secret Allocation Agreement has resulted in multiple antitrust injuries affecting interstate commerce, which is alleged above and incorporated herein by reference.

217. Plaintiffs have standing to assert this cause of action for violation of Sherman Act § 1 because they have been personally injured by the unreasonable restraint of trade, which is alleged above and incorporated herein by reference.

**SECOND CAUSE OF ACTION**

**VIOLATION OF SECTION 2 OF THE SHERMAN ACT (15 U.S.C. § 2)**

**(Against Defendants Hall and DHRC)**

218. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 217 in this Second Amended Complaint.

219. The market for real-time trading in numismatic materials in the United States is the relevant market, which is alleged above and incorporated herein by reference.

220. Hall and DHRC have a monopoly in the market for real-time trading in numismatic materials in the United States because they possess monopoly power on the CCE website, which is alleged above and incorporated herein by reference.

221. Hall and DHRC have willfully acquired their monopoly power by entering into agreements with other traders and excluding WRCG from CCE, which is alleged above and incorporated herein by reference.

222. Hall and DHRC have a specific intent to control the prices on numismatic materials sold on the CCE website, which is alleged above and incorporated herein by reference.

223. Hall and DHRC have a specific intent to destroy competition with non-Third Party Dealers including their biggest competitors, Plaintiffs, which is alleged above and incorporated herein by reference.

224. Hall and DHRC entered into a Secret Allocation Agreement in order to destroy competition, which is alleged above and incorporated herein by reference.

225. Hall and DHRC engaged in Price Fixing in order to destroy competition, which is alleged above and incorporated herein by reference.

226. Hall, as a dealer through his company DHRC, engages in illegitimate predatory practices and anticompetitive conduct at the detriment of CCE rare coin consumers because he makes sure that only his coins are sold by (a) eliminating his direct and biggest competitors and (b) asserting control over the grading service PCGS that values the coins.

227. Hall and DHRC have economic power in the U.S. market for real-time trading in numismatic materials because Hall is the owner of CCE and DHRC.

228. The essential facility is the CCE website, which is alleged above and incorporated herein by reference.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

229. Hall has excluded WRCG from the CCE in an attempt to destroy competition.

230. Hall and DHRC have conspired to monopolize the U.S. market for real-time trading in numismatic materials, which is alleged above and incorporated herein by reference.

231. There is resulting antitrust injury, which is alleged above and incorporated herein by reference.

232. As a direct and proximate result of the acts and omissions of Hall and DHRC, which is alleged above and incorporated herein by reference, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**VIOLATION OF SECTION 3 OF THE CLAYTON ACT (15 U.S.C. § 14)**

**(Against Defendant Hall)**

233. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 232 in this Second Amended Complaint.

234. There is an Exclusive Dealing Agreement, which is alleged above and incorporated herein by reference.

235. The effect of the Exclusive Dealing Agreement is to substantially decrease competition and to create a monopoly, which is alleged above and incorporated herein by reference.

236. The relevant market for the Exclusive Dealing Agreement is the market for real-time trading in numismatic materials in the United States, which is alleged above and incorporated herein by reference.

237. The antitrust injury resulting from the Exclusive Dealing Agreement is alleged above and incorporated herein by reference.

238. As a direct and proximate result of the acts and omissions of Hall as alleged herein, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

239. Pursuant to Hall's violation of 15 U.S.C. § 14, plaintiffs are entitled to treble damages, reasonable attorney's fees, and costs.

240. Plaintiffs request a court order enjoining Hall from pursuing Exclusive Dealing Agreements because these agreements put Plaintiffs at a competitive disadvantage on the market for real-time trading in numismatic materials in the United States.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF LANHAM ACT (15 U.S.C. §§ 1051 *et seq.*)**

**(Against Defendant Hall)**

241. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 240 of this Second Amended Complaint.

242. Hall, a direct commercial competitor of Plaintiffs in the numismatic materials business, made false advertisements on the CCE trading website.

243. The first false advertisement is that rare coins graded by PCGS, one of Hall's companies and a company owned by CU, are valued accurately and impartially.

244. The false advertisement stated above is not true.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

245. PCGS has a correct grading rate of 80%, thus, PCGS's grading of coins is not 100% accurate.

246. PCGS has a financial interest in the coins being graded because its owner, Hall, sells these coins in the relevant market.

247. As reflected in **Exhibit A**, PCGS is permanently restrained and enjoined from representing, directly or by implication, that PCGS grading is "objective," "consistent," or "unbiased," if such representation is contrary to fact.

248. As alleged above and incorporated by reference herein, coin grading is by its nature subjective (and inconsistent), and not objective, and any claim of "objectivity" is always contract to fact.

249. This false advertisement is also in violation of the FTC Consent Decree, as alleged above and incorporated by reference herein.

250. This false advertisement was disseminated sufficiently on the CCE website since they were published by CCE and PCGS, two well-known entities in the rare coin trading industry.

251. This false advertisement actually deceived or had the tendency to deceive most, if not all, of the consumers and members on the CCE website, including Plaintiffs, who were CCE members for 35 years.

252. The deception was material because it influenced members, including Plaintiffs, to sell and purchase PCGS graded coins, trusting that the values given to these coins by PCGS were sound and accurate when the values were actually inaccurate.

253. Plaintiffs have been injured by the false advertisement because the false advertisement caused Plaintiffs to lose or likely to lose business to Hall because coins graded by Hall's company, PCGS, were purchased over coins not graded by PCGS and offered for sale by Plaintiffs.

254. The second false advertisement is that rare coin dealers can become members on CCE (a company of Hall's) if they meet the CCE membership requirements.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

255. This second false advertisement is not true.

256. This second false advertisement actually deceived or had the tendency to deceive most, if not all, of the consumers and members on the CCE website, including Plaintiffs, who were CCE members for 35 years.

257. The deception was material because it caused members, including Plaintiffs, to believe that they could compete in the market for real-time trading in numismatic materials in the United States if they met certain requirements when in fact, the existence of illegal agreements operate to wholly exclude certain consumers, including Plaintiffs, from the market notwithstanding satisfying the CCE criteria.

258. Plaintiffs have been injured by this second false advertisement because the false advertisement caused Plaintiffs to lose or likely to lose business because Plaintiffs are entirely unable to participate in the market for real-time trading in numismatic materials in the United States since CCE is the only forum that exists within such market. Plaintiffs have lost significant business as a result of their inability to compete in this market.

259. As a direct and proximate result of Hall's acts and omissions, including the two false advertisements, which are alleged above and incorporated herein by reference, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**FIFTH CAUSE OF ACTION**

**UNREASONABLE RESTRAINT OF TRADE**

**(CAL. BUS. & PROF. CODE § 16720)**

**(Against Defendants Hall, DHRC, East and Brandow)**

260. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 259 of this Second Amended Complaint.

261. Hall, DHRC, East and Brandow engaged in monopolization regarding CCE's membership and CCE's trading rules, which is alleged above and incorporated herein by reference.

262. Hall and DHRC engaged in an Exclusive Dealing Agreement, which is alleged above and incorporated herein by reference.

263. Hall and DHRC engaged in Price Fixing, which is alleged above and incorporated herein by reference.

264. The Antitrust Injury that resulted from this monopolization, Exclusive Dealing Agreement and Price Fixing, is alleged above and incorporated herein by reference.

265. Plaintiffs have standing to assert this cause of action for violation of California Business and Professions Code § 16720, because the anti-competitive activities of Hall, DHRC, East and Brandow resulted in injury to the marketplace, as alleged above, directly and proximately causing economic harm to Plaintiffs in an amount to be proven at trial.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**SIXTH CAUSE OF ACTION**

**UNFAIR COMPETITION (CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*)**

**(Against Defendants Hall and DHRC)**

266. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 265 of this Second Amended Complaint.

267. The unlawful acts or practices of Hall and DHRC that are forbidden by law are: (a) controlling rare coin prices by maintaining pricing information contained on the CCE website in violation of Sherman Act § 1; (b) requiring that the coins be graded by PCGS, in violation of Sherman Act § 2; (c) limiting the scope of competitors in the U.S. market for real-time trading in numismatic materials to Third Party Dealers with whom Hall and DHRC maintain the Secret Allocation Agreement on the CCE website; (d) engaging in the Exclusive Dealing Agreement, which conduct includes but is not limited to the posting and advertising of "sham offers" by Hall, DHRC and/or Third Party Dealers; (e) reneging on a commemorative coin contract with Plaintiffs; and (f) the violation of the FTC Consent Decree as alleged above and incorporated by reference herein. These claims are alleged above and incorporated herein by reference.

268. There is injury in fact to competition because Hall and DHRC have engaged in the Secret Allocation Agreement and Exclusive Dealing Agreement with Third Party Dealers, alleged above and incorporated herein by reference, preventing CCE customers from dealing with the numismatic materials dealers of their choosing.

269. There is actual loss of money because PCGS values numismatic materials at a higher price than other grading services, forcing consumers to pay higher prices for numismatic materials purchased on CCE. Additionally, Plaintiffs have lost money as a result of the Exclusive Dealing Agreement by being excluded from the benefit of deals posted on the CCE website by Hall, DHRC or Third Party Dealers for numismatic materials. Further, Plaintiffs have lost business because they are unable to participate in the U.S. market for real-time trading in numismatic materials since there is no other platform to compete in this market other than CCE. Plaintiffs have lost significant business as a result of their inability to compete in this market

270. Plaintiffs' standing to assert this cause of action is alleged above and incorporated herein by reference.

271. The real-time bidding of rare coins on the CCE website makes the market for real-time trading in numismatic materials in the United States a wholly unique market and the CCE website cannot be replicated.

272. The U.S. market for real-time trading in numismatic materials on the CCE website stands alone, and the exclusion of direct competition by the biggest dealers works to heighten prices by narrowing the pool of dealers with whom consumers may transact deals.

273. Hall and DHRC require that the coins sold on the CCE website be graded (priced and certified) by PCGS.

274. CCE members must abide by the rule that coins traded on CCE should be primarily PCGS graded coins.

275. Plaintiffs were prohibited from trading on the CCE website because they voiced dissatisfaction with this tactic to Hall.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

276. Hall's biggest competitors, Plaintiffs, are not allowed to compete at all in the U.S. market for real-time trading in numismatic materials for the business of customers of rare coins on the CCE website.

277. Hall and DHRC have a monopoly over the U.S. market for real-time trading in numismatic materials.

278. Hall and DHRC conspired with Third Party Dealers to obtain this monopoly.

279. Certain dealers with whom customers would otherwise transact online trades of rare coins can no longer trade in the U.S. market for real-time trading in numismatic materials because of Hall's and DHRC's monopoly on the CCE website.

280. Hall has eliminated competition indefinitely at the expense of CCE customers who now can only primarily purchase coins graded by PCGS.

281. As a direct and proximate result of the acts and omissions of Hall and DHRC, including Hall's and DHRC's unfair competition, which is alleged above and incorporated herein by reference, Plaintiffs seek injunctive relief.

282. Plaintiffs seek injunctive relief that prohibits Hall and DHRC from applying an arbitrary and selective membership process on the CCE website and from limiting the disclosure of price information only to CCE members, which is alleged above and incorporated herein by reference.

283. Plaintiffs seek equitable relief because relief at law is inadequate. The improper administration of CCE's membership policies, Secret Allocation Agreement, and exclusive dealing agreement, alleged above and incorporated herein by reference, constitute on-going injuries to Plaintiffs that cannot be cured by a one-time award of damages.

284. Plaintiffs seek restitution in an amount to be proven at trial.

///

///

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

**SEVENTH CAUSE OF ACTION**

**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(Against Defendants CU, CCE, Hall, DHRC, East and Brandow)**

285. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 284 of this Second Amended Complaint.

286. Plaintiffs had a valid business expectancy because they had contracts with customers, with whom Plaintiffs had done business in the past on the CCE website, and with whom Plaintiffs reasonably expected to conduct business in the future.

287. CU, CCE, Hall, DHRC, East and Brandow knew that Plaintiffs had these contracts because Plaintiffs were CCE members for 35 years and all business transactions were completed and approved using online forms that are on the CCE website.

288. CU, CCE, Hall, DHRC, East and Brandow intentionally interfered with Plaintiffs' business expectancy by entering into an agreement with Third Party Dealers to post false, insulting and derogatory statements about Plaintiffs' business practices, which were viewable on the message board on the CCE website, which was open to all members for several days.

289. CU, CCE, Hall, DHRC, East and Brandow did not take immediate action to have these posts removed despite knowing about them for some time.

290. CU's, CCE's, Hall's, DHRC's, East's and Brandow's intentional conduct in failing to remove the false and derogatory messages from the message board prevented Plaintiffs from continuing to do business with dealers and customers as they had previously done over the course of several years.

291. CU's, CCE's, Hall's, DHRC's, East's and Brandow's intentional conduct in failing to remove the derogatory postings from the CCE message board resulted in the allocation of customers in violation of California Business and Professions Code § 16720.

292. Plaintiffs suffered economic harm in the form of lost coin deals, trades and transactions as a result of CU's, CCE's, Hall's, DHRC's, East's and Brandow's interference.

293. Plaintiffs seek compensatory relief for lost profits and damages from 2008 to the present date in an amount to be proven at trial, which is known to exceed the jurisdictional requirements of this Court.

294. Hall's and DHRC's interference (the agreement among Hall, DHRC and Third Party Dealers to make false statement about Plaintiffs' business practices to prevent the direct and biggest competitors and customers from doing business with each other on the CCE website) violates Sherman Act § 1.

295. CU's, CCE's, Hall's, DHRC's, East's and Brandow's interference resulted in an unreasonable restraint of trade in the U.S. market for real-time trading in numismatic materials by CU, CCE, Hall, DHRC, East and Brandow, in violation of California Business and Professions Code § 16720.

296. The duty to Plaintiffs owed by CU, CCE, Hall, DHRC, East and Brandow goes hand in hand with the valid business expectancy to continue trading rare coins with dealers and customers in the U.S. market for real-time trading in numismatic materials, as Plaintiffs had previously agreed to do with these dealers and customers on the CCE website.

297. Plaintiffs were CCE members for several years and all business transactions were completed and approved using CCE's online forms.

298. Hall (as the Director of CCE), East (as the President of CCE), Brandow (as the Sales Director of CCE) and CU and CCE as the companies supporting the CCE website owed Plaintiffs a duty to grant an arbitration hearing, as permitted by CCE's rules, when Plaintiffs requested such a hearing with respect to improper customer complaints made against Plaintiffs by CCE members.

///

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

299. Plaintiffs seek foreseeable money damages arising from the subject business relationships, which are alleged above and incorporated herein by reference, which Hall, DHRC, East and Brandow disrupted, in an amount to be proven at trial.

300. As a direct and proximate result of the acts and omissions of Hall, DHRC, East and Brandow which is alleged above and incorporated herein by reference, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**

**NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(Against Defendants CU, CCE, Hall, DHRC, East and Brandow)**

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

301. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 300 of this Second Amended Complaint.

302. Plaintiffs had a valid business expectancy because they had contracts with customers, with whom Plaintiffs had done business in the past on the CCE website, to continue to do business in the relevant market.

303. CU, CCE Hall, DHRC, East, and Brandow knew or had reason to know that Plaintiffs had these contracts because Plaintiffs were CCE members for 35 years and all business transactions were completed and approved using online forms on the CCE website.

304. CU, CCE, Hall, DHRC, East and Brandow negligently interfered with Plaintiffs' business expectancy by entering into an agreement with Third Party Dealers to post false, insulting and derogatory statements about Plaintiffs' business practices, which were viewable on the message board on the CCE website, which was open to all members for several days.

305. CU, CCE, Hall, DHRC, East and Brandow did not take immediate action to have these posts removed despite knowing about them for some time.

306. CU's, CCE's, Hall's, DHRC's, East's and Brandow's negligent conduct prevented Plaintiffs from doing continuing to do business with dealers and customers as they had previously done over the course of several years.

307. CU, CCE, Hall, DHRC, East and Brandow's negligent conduct, which is alleged above and incorporated herein by reference, resulted in the allocation of customers in violation of California Business and Professions Code § 16720.

308. Plaintiffs suffered economic harm in the form of lost coin deals, trades and transactions as a result of CU's, CCE's, Hall's, DHRC's, East's and Brandow's interference.

309. Plaintiffs seek compensatory relief for lost profits and damages for 2008 to the present date in an amount to be proven at trial, which is known to exceed the jurisdictional requirements of this Court.

310. CU's, CCE's, Hall's, DHRC's, East's and Brandow's interference resulted in an unreasonable restraint of trade in the U.S. market for real-time trading in numismatic materials by CU, CCE, Hall, DHRC, East and Brandow, in violation of California Business and Professions Code § 16720.

311. The duty to Plaintiffs owed by CU, CCE, Hall, DHRC, East and Brandow goes hand in hand with the valid business expectancy to continue to trade rare coins with dealers and customers in the U.S. market for real-time trading in numismatic materials, as Plaintiffs had previously agreed to do with these dealers and customers on the CCE website.

312. Plaintiffs were CCE members for several years and all business transactions were completed and approved using Defendants' online forms.

313. Hall (as the Director of CCE), East (as the President of CCE), and Brandow (as the Sales Director of CCE) and CU and CCE as the companies supporting the CCE website owed Plaintiffs a duty to grant an arbitration hearing, as permitted by CCE's rules, when Plaintiffs requested such a hearing with respect to improper customer complaints made against Plaintiffs by CCE members.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

314. Plaintiffs seek foreseeable money damages arising from the subject business relationships, which are alleged above and incorporated herein by reference that CU, CCE, Hall, DHRC, East and Brandow disrupted.

315. As a direct and proximate result of the acts and omissions of CU, CCE, Hall, DHRC, East and Brandow, which are alleged above and incorporated herein by reference, Plaintiffs have sustained loss in the form of economic harm in an amount to be proven at trial.

**NINTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against Defendants CU, CCE, Hall, East and Brandow)**

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

316. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 315 of this Second Amended Complaint.

317. CU, CCE, Hall, East and Brandow breached the attorney fees clause in a settlement agreement entered among Plaintiffs and CU, CCE, Hall, East and Brandow.

318. Attached hereto and incorporated by reference as **Exhibit B** is a true and correct copy of the settlement agreement ("Settlement Agreement").

319. CU, CCE, Hall, East and Brandow filed a motion for attorney's fees in state court seeking recovery for fees that had already been resolved under the Settlement Agreement.

320. The parties entered into the Settlement Agreement for legal fees, which provided, in relevant part, that CU, CCE, Hall, East and Brandow could not seek subsequent recovery of attorney's fees that had been paid.

321. The Settlement Agreement provides that the prevailing party is entitled to attorney's fees in order to enforce any term of the Settlement Agreement.

322. Plaintiffs carried out of all of their obligations pursuant to the Settlement Agreement. Specifically, pursuant to the Settlement Agreement, Plaintiffs did the following: (a) Plaintiffs dismissed with prejudice Plaintiffs' Notice of Appeal challenging the Order of the Superior Court of California, County of Orange for

Dismissal of Greg Roberts, Frank Greenberg, Robert Lecce and Richard Schwary; and (b) Plaintiffs paid in full the sum of $12,000 in attorney fees, and the sum of $1,460 for costs, for a total of $13,460, to Collectors Universe, Inc., Certified Coin Exchange, David Hall, Cassi East, Michael Brandow, Greg Roberts, Frank Greenberg, Robert Lecce and Richard Schwary, through their counsel, Attlesey Storm, LLP, on or before November 30, 2011.

323. All of the terms of the Settlement Agreement are material terms.

324. This cause of action for breach of contract has not been litigated, because the state court did not issue a final judgment as to this issue.

325. As a result of this breach of contract by CU, CCE, Hall, East and Brandow, Plaintiffs seek to enforce the terms of the Settlement Agreement.

326. As a result of this breach of contract by CU, CCE, Hall, East and Brandow, Plaintiffs have been injured in a monetary amount to be proven at trial.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

1. For monetary and compensatory damages in an amount to be proven at trial;
2. For treble damages;
3. For an injunction that prohibits Exclusive Dealing Agreement, pursuant to the third cause of action for violation of Clayton Act § 3;
4. For an injunction that prohibits the unbridled administration of CCE rules regarding membership, pursuant to the sixth cause of action for unfair competition pursuant to California Business and Professions Code § 17200;
5. For an injunction that prohibits Hall and DHRC from engaging in the Secret Allocation Agreement, pursuant to the sixth cause of action for

unfair competition pursuant to California Business and Professions Code § 17200;

6. For an injunction that prohibits Hall and DHRC from engaging in the Exclusive Dealing Agreement, pursuant to the sixth cause of action for unfair competition pursuant to California Business and Professions Code § 17200;

7. For restitution in an amount to be proven at trial, pursuant to the sixth cause of action for unfair competition pursuant to California Business and Professions Code § 17200;

8. For reasonable attorney's fees;

9. For costs of suit; and

10. For such other and further relief as the Court may deem just and equitable.

DATED: October 10, 2012

**EDGERTON & WEAVER, LLP**

By: ______________________

Theodore C. Peters, Esq.
Attorneys for Plaintiffs,
William Dominick and Westwood Rare Coin Gallery, Inc.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com

## DEMAND FOR JURY TRIAL

Plaintiffs WILLIAM DOMINICK and WESTWOOD RARE COIN GALLERY, INC. hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: October 10, 2012

**EDGERTON & WEAVER, LLP**

By: ______________________

Theodore C. Peters, Esq.
Attorneys for Plaintiffs,
William Dominick and Westwood Rare Coin Gallery, Inc.

EDGERTON & WEAVER, LLP
2615 Pacific Coast Hwy., Suite 300
Hermosa Beach, California 90254
Telephone: (310) 937-2066
Facsimile: (310) 937-2064
www.edgertonweaver.com